| 22 | 269 |
| 125 | 482 |
| 125 | 632 |

No. 47.—MARK A. COOPER, plaintiff in error, vs. GEORGE YOUNG, Superintendent of the Western & Atlantic Railroad, defendant in error.

Evidence of loss of profits by the necessary suspension of Iron Works in consequence of the failure of a common carrier to deliver coal according to contract, is inadmissible in an action against said carrier for a failure to transport and deliver under his contract.

Case, from Fulton Superior Court. Tried before Judge HAMMOND, at October Term, 1856.

This was an action brought by Mark A. Cooper, against George Young, as superintendent of the Western and Atlantic railroad, to recover damages alleged to have been sustained by reason of the failure of defendant to transport by railroad and deliver a certain quantity of stone coal at the times and places, and in the quantities, which defendant undertook to do.

The plaintiff in his declaration averred that, in the summer of 1852, defendant undertook and promised to transport from Chattanooga, Tennessee, and to deliver to him at Etowah, Cass county, Georgia, for the use of his iron mills, one car load of stone coal per day. That during the month of December of that year, he failed to deliver said coal as per contract, whereby plaintiff's rolling mills ceased operations for the most part of said month, and that he sustained damage thereby to the amount of three thousand dollars.

The defendant pleaded: 1st. The general issue. 2d. That

if such contract as that alleged was ever made, it was by some one having no authority so to do, and without consideration, the said plaintiff having paid or tendered no part of the freight.   3d.  That if any coal was ever received by said railroad, the same was duly transported and delived at the place of destination, within a reasonable time after it was received; and if it was not, it was because said railroad and its officers had not the means of transporting the same.

Plaintiff, upon trial, offered the depositions of two witnesses, who were employed and engaged in and about his iron manufactory, in December, 1852, who testified that the operations of the establishment were suspended for sometime during that month, in consequence of the failure of the railroad to deliver coal; that the heating furnaces of the rolling mill was stopped for five days, and the puddling furnaces, the whole of the month; that the loss sustained by the stoppage of the rolling furnaces was about seventy dollars per day, and of the heating furnaces about one hundred and sixty dollars per day.   This estimate of loss was based upon a calculation of the number of tons of iron each furnace would produce daily, if in operation, the value of said iron, and the net profits on each ton manufactured.

The Court, upon motion of defendant's counsel, ruled out and rejected all that part of the depositions relating to the loss of profits sustained by plaintiff in consequence of the stoppage of his mills, and the estimate based upon profits plaintiff would have made if his mills had been in full operation.

To which ruling and decision, counsel for plaintiff excepted, and thereupon tendered his bill of exceptions, &c.

THOS. L. COOPER, for plaintiff in error.

OVERBY & BLECKLEY, for defendant in error.

*By the Court.*—McDonald, J. delivering opinion.

This suit is instituted against the defendant, as a common carrier, for the non-delivery of stone coal, which he had undertaken to carry for the plaintiff from Chattanooga, in Tennessee, to Etowah, in Cass county Georgia. The plaintiff is engaged extensively in the manufacture of iron, and relies for his supply of coal, to carry on his operations, on that which is carried by railroad from Chattanooga to the neighborhood of his works. The coal belonged to plaintiff, the defendant was to transport it. It is alleged, that by reason of the failure of defendant to carry the coal according to contract, the plaintiff was obliged to suspend his work, and that, by reason of that suspension, he failed to make a certain amount of per diem profit, and this loss of profit, he insists, is the measure of his damages. He offered proof of these profits, which was objected to by the defendant's counsel, and the decision of the Court sustaining the objection, is the only error complained of in the record. The soundness of the decision in law, depends on the rule by which damages are to be assessed against common carriers, for non-delivery of articles committed to them, at the time and place stipulated for their delivery

The general rule is, that if a common carrier fail to deliver goods according to contract, he is liable for the value of the goods at the time and place at which he engaged to deliver them. The rule is an easy and simple one. It is just to the owner, and does no injustice to the carrier. *Sedgw. on the Meas. of Dam.* 355 *Angl. on Car.* 460, *Edward on Bailvent*, 570. In such cases the carrier deducts from the value at the place of destination, the freight for transporting them and pays the balance. The owner gets his profit, and the carrier gets his freight. But if there be no trade in the article transported at the place of destination, and nothing of the kind can be purchased there ; and the owner wishes it for consumption in carrying on his business, and cannot proceed without it, what is the rule ? We know of no rule ma-

king the carrier liable for the loss of profits in the sale of articles to be manufactured of materials delivered to him for transportation, if he should fail to deliver them.

When he undertakes as a common carrier, he undertakes in view of the liability which the law annexes to the character of common carriers, for a breach of their contracts ; and the owner, when he commits his goods to him, does it likewise with a view to the redress which the law entitles him to against the carrier, if he make default. But because there is no trade in the article delivered to be carried at the place of destination, it is no reason that the carrier should not be liable for the breach of his contract. The plaintiff is injured, and seriously injured by his default. In the case before us the plaintiff is engaged at heavy expense, in the manufacture of iron ; and coal is essential to the carrying on of his business. His works are constructed for the use of coal, and a failure in a regular supply, subjects him to serious losses. If there be no market at the place at which the coal was to be delivered to the plaintiff, from which he might · supply himself, he must resort to some other mode of transportation however expensive, or stop his works. In the case of *O'Conner, vs. Foster*, 10*th Watt.* 418 *cited in Sedgwick on Dam.* 357, the defendant was sued for damages for refusing to transport wheat from Pittsburgh to Philadelphia, according to contract. The transportation was prevented by the approaching freezing of the canal. The *defendant* contended that the measure of damages was the price agreed on for the freight, and that for which the carriage by others might have been obtained ; and the Court held that this would be the rule, if the plaintiff *could* have obtained another conveyance. There being a market for wheat at Pittsburg, as well as Philadelphia, the Court held, the rule of damages to be the difference between the value of wheat at Pittsburgh, with the freight added, and its value at Philadelphia.

In estimating the damages in cases when the article to be transported cannot be purchased at the place of destination,

and the carrier who has contracted to carry it has the exclusive right of transportation by the cheapest mode, the differ-ence between the price agreed upon or usual by that mode and the terms on which others would carry it by other modes of transportation, ought to be considered, and in this case and all like it, it might not be improper to admit additionally, evidence of losses by the expense of hands, &c., during a *necessary* suspension of business occasioned by the default of the carrier, for a period during which the plaintiff, by ordinary diligence, could not supply himself by other means with the article agreed to be carried.

It is proper for me to remark that the rule as to the measure of damages in this case was not very fully discussed by us, as it was not necessary for the decision of the question presented in the record, to go beyond the particular measure of damages, insisted on by the plaintiff.

We know of no rule which subjects a common carrier to a higher measure of damages, for a breach of his contract, than the amount of profits which the owner might have made, over the freight and cost, by a sale at the time and place at which the article or goods to be transported were to be delivered, provided there be a market for the article there. In case there be no market for the commodity or goods, and the owner requires them for his own use, I do not see why the rule should not be modified to suit the justice of the case, but it cannot, in our judgment, be so modified as to hold that the carrier shall be liable for the profits which the owner might have realized by the sale of articles into which he might manufacture them. Such a rule would make the carrier an insurer against all casualties in the process of manufacturing.

Several cases have been relied on to establish the proposition contended for, but none of them, in our judgment, sustains it. The case of *Mastalom against the Mayor of Brooklin, 7 Hill's New York Reports, Sedgwick on Dam.,* 74, was not the case of a carrier, but it was the ordinary case of an agreement to purchase at stipulated prices, marble to be

delivered as agreed upon in the contract. The seller of the marble had to purchase it. The agreement had all the essential parts of a contract. One party had no right to disaffirm and annul it without the consent of the other.

If the plaintiff in that action had been a defendant, and the suit had been for a failure to deliver the marble agreeably to his contract of sale, he could not have discharged himself from liability, by alleging that he could not himself purchase the marble at any price, but he would have been held to the contract, and the damages to which he would have been subjected, would have been the difference between the price at which he had contracted to sell it, and the price that the plaintiff had, or would have had to pay for it, however enormous, if it was a price, and no greater, at which the same quality of marble could be obtained, by the use of due prudence and diligence. If one of the elements of a contract be mutuality of obligation, the other party was certainly liable for a breach, from whatever cause, except the fault of the plaintiff, and he could not excuse himself by his abandoning or suspending the work on which he intended to use the marble.

But the action in this case was not instituted for a breach of the sale of coal at a stipulated price to be delivered at that place. Had it been, the measure of damages would have been the difference between the market price at that place and the stipulated price, without reference to its value elsewhere.

The rule which I have suggested as the proper one for the measure of damages against a carrier who has the exclusive right of transportation by the cheapest mode, at the suit of a person engaged extensively in manufacturing, and who, from the breach of the contract for carrying the article necessary to him in his business, by the carrier, has been compelled to suspend his operations, seems to meet the justice of the case more nearly than any that occurs to my mind.

Judgment affirmed.