THE ROME RAILROAD COMPANY, plaintiff in error, *vs.* ANDREW M. SLOAN, defendant in error.

1. When freights received by one railroad, is to be carried over connecting roads, in the car on which it is shipped, without being trans-shipped to the cars of the connecting road, the liability of the connecting road does not commence, till the car is delivered to, and received by the latter, and the first road is liable to the shipper till it shows such delivery.

2. If the receipt or bill of lading were lost, and the evidence showed that the cotton was shipped at Rome, and consigned to Augusta, and was burnt at Kingston, where the Rome road connects with the Western and Atlantic Railroad, it is not sufficient cause for a new trial, that the Court charged the jury that the Rome road might bind itself to carry the cotton beyond its terminus; but that such contract would not be presumed, and it must be shown by proof, that there was an express contract to carry beyond Kingston, or the Rome road would not be liable.

3. The verdict will not be set aside as excessive, when the value of the cotton at the time of shipment was proved in Confederate money only, without proving the value of the Confederate money; but it was shown to have been received at par, in payment of debts, and that land could then be purchased with it, almost as low as it could at other times in lawful money, and the verdict was for a much smaller sum than the cotton was proved to have been worth in Confederate money when shipped.

4. While the measure of damages, is the value of the cotton at the point of destination, the defendant has no cause of complaint that the proof is confined to the value of the cotton at the point of shipment, or the place where it was burnt on the line of the road; as goods are presumed to be worth as much or more, at the place of destination, than at the point of shipment, till that presumption is rebutted by proof.

Common-carriers. New trial. Before Honorable J. J. WRIGHT, an attorney, presiding by consent. Floyd Superior Court. July Term, 1869.

Sloan sued the Rome Railroad Company, as a common carrier, for twenty-four bales of cotton consigned to Clayton & Phinizy, Augusta, Georgia. One count averred that said Company undertook to deliver it to the Western and Atlantic Railroad at Kingston, Georgia; the other that the delivery was to be in Atlanta, Georgia; and the value, in each, was averred to be $6,000 00, without fixing any place for such

valuation. The Judge being related to the parties, an attorney was made Judge *pro hac vice*, by consent. That the cotton was marked as aforesaid and received by said Company, and burnt at Kingston, Georgia, and that its road connected with the Western and Atlantic Railroad at Kingston, were uncontradicted. So much of the evidence as is material to an understanding of the opinion is substantially as follows : Sloan testified that he shipped the cotton from Rome, Georgia, to be transported to Augusta, Georgia, and took a receipt from the Rome Railroad Company for the cotton shipped as aforesaid, which receipt was burned when the Federal army was in Rome. Fifteen of the bales weighed five hundred and fifty pounds each, the others were of usual weight ; cotton was worth in 1863 from fifty to sixty cents per pound in Confederate currency. Stephens, who was then agent of said Company and of the Western and Atlantic Railroad at Kingston, testified, that when the cotton came to Kingston it was in a stock car, next to the engine, and sparks of fire were falling over it like hail and lodging between the bales ; fearing that the cotton would burn, he told the conductor that he would not receive the cotton, and did not receive it from said Company ; his orders were positive to receive no cotton for the Western and Atlantic Railroad in such order; he refused to accept the freight list, and it was slipped under the door next morning.

The cotton was burned about three hours after it arrived and after the car containing it had been put upon the sideling of the Western and Atlantic Railroad, where, by custom, through freight from said Company was usually delivered to the Western and Atlantic Railroad. There was other evidence to show how the wind was blowing, the position of the sideling with regard to the main track of the Western and Atlantic Railroad, and the times when its trains usually passed, with a view to show that the fire could not have been from said trains. The warehouseman who shipped the cotton, testified, that the point of delivery, on the part of said Company, was at Kingston ; that the cotton was low middling grade, and averaged from four hundred and eighty to

five hundred pounds per bale, in his opinion; that such cotton was then worth forty to forty-five cents per pound in Confederate currency; that it was worth the same in greenbacks, but there was no market for cotton in greenbacks in the Confederacy, Confederate money there being the only currency. Here the plaintiff rested the cause.

For the defendant it was shown that the receipts which said Company at that time gave, stated that the freight would be delivered to the Western and Atlantic Railroad at Kingsston, and that the putting of the car on said sideling was, and long had been, the customary way of making delivery to the Western and Atlantic Railroad. Evidence was also introduced, such as the plaintiff had anticipated, tending to show that the fire came from some passing engine on the Western and Atlantic Railroad.

The conductor, who made such delivery, said that the agent was out when he arrived, and he put the slip through a hole in his door, made for that purpose, and the refusal of the agent to receive the cotton was denied; at least the witness said he did not recollect any such conversation. He further testified, that the cotton was in a Western and Atlantic Railroad box car, which had been sent to Rome for said cotton.

J. B. PECK, Master of Transportation of the Western and Atlantic Railroad, testified, that if a car was loaded to go through, it was always considered by the railroad as delivered when it was placed on said side-track, and other witnesses corroborated this as the custom as to delivery.

The President of said Company testified, that such cotton was then worth from forty to forty-four cents per pound in Confederate currency; that there was no other currency here then, and it was much depreciated. He further said, that the Company collected its freight at Kingston, and only contracted to deliver to the Western and Atlantic Railroad there. Another witness testified that Confederate money was received at par at that time; for the purposes of trade it was worth more than to buy gold with it, gold had an artificial value; some time after corn sold for $5 00 per bushel, though it was

worth from $2 00 to $2 50 per bushel at the time of the burning, and land was bought and sold in several instances for but little more than it would bring in greenbacks.   It was also shown that the Western and Atlantic Railroad had also been sued for this cotton, and that one verdict had been rendered in its favor.

The Court charged the jury, among other things, that they should ascertain from the evidence whether the Company undertook to carry the cotton beyond its own *terminus ;* but that to make the defendant liable for loss on a connecting road, there must be an express contract or facts proven amounting to an express contract or understanding to carry and deliver *beyond its terminus;* that if the Company undertook to carry the cotton to Kingston only, and there delivered it to the Western and Atlantic Railroad, according to plaintiff's directions, or the custom of the trade, and the connecting road had received the goods as in good order, the defendant was no longer liable.   The measure of damages is the value of the cotton at the time and place of its destruction, or at any place from the point of shipment to the place for delivery, *plus* interest.

The jury found for the plaintiff for $3,339 84.   A new trial was moved for, upon the grounds that the verdict was contrary to law, etc., against the weight of the evidence, etc., because the charge as to any contract to deliver beyond Kingston was hypothetical, and as to the measure of damages, was erroneous, because there was no evidence of the value of the cotton at Augusta, Georgia.   The new trial was refused, and that is assigned as error on said grounds.

W. AKIN, PRINTUP & FOUCHE, for plaintiff in error.

HARVEY & SCOTT, for defendant.

BROWN, C. J.

1. The evidence is in conflict in this case, as to the delivery of the cotton shipped by the Rome Railroad Company, to the Western and Atlantic Railroad, at Kingston. Mr. Stephens, who was the agent of both roads at that point, swears that it was not delivered to the Western and Atlantic Railroad, and that, as agent of that road, he refused to receive it, because it was shipped in a stock car, and the sparks were falling on it, from the engine, when it arrived at Kingston. He also states that he had positive orders from the authorities of the State Road to act as he did, in such cases. In this case, the receipt or bill of lading was lost, but the presumption is, that the Rome Railroad Company received the cotton in good order. Having received it for shipment to Augusta, if there were no special contract to be liable beyond their *terminus*, they were only liable till they had delivered the cotton to the connecting road and it had been received by the latter, when the liability of the one ceased and the other commenced. But as there is a dispute about the fact of the delivery, and as the cotton was to be shipped through, on the car which came from Rome, without being trans-shipped to another car when turned over to the connecting road, the question of delivery was one of fact for the jury, and as the evidence was in conflict, we do not feel at liberty to disturb their verdict.

2. The plaintiff in error complains that the charge of the Court as to a special contract to carry the cotton through to Augusta was erroneous, because there was no evidence to support it. We admit that the evidence may not be very strong, but as the receipt had been lost or destroyed, and as both the shipper and the agent of the road swore the cotton was to be transported from Rome to Augusta, we cannot say there was no evidence on that point. In any event, as the cotton was burnt at the *terminus* of the Rome Road, we are unable to see how the defendant was damaged by the charge, that the Rome Road might bind itself to carry the cotton through to Augusta, but that such contract could not be presumed, and that it must be shown by proof, that there was an ex-

The Rome Railroad Company *vs.* Sloan.

press contract to carry beyond Kingston, or the road would not be liable.

3. It is further objected, that the verdict was excessive, because the value of the cotton at the· time of shipment was proved in Confederate money only, and there was no proof of the value of Confederate money.   It is true the value of Confederate money in gold was not proved.   But there is proof that it had value at that time ; that it was used *at par* in the payment of debts, that corn was worth two dollars and fifty cents per bushel, and that land sold in several instances for Confederate money for but little more than it now brings in greenbacks.   As the verdict is for a much smaller sum than the cotton was proved to have been worth in Confederate money, and as the value of the Confederate money, though not shown by the gold standard, was shown in comparison with other property, we do not feel at liberty to disturb the verdict on this ground.   When the value of cotton in Confederate money had been shown, and it was further testified, that it was worth *par* in payment of debts, etc., this was sufficient to cast the *onus* on the defendant, if it desired to controvert its value as estimated by the comparisons made by the plaintiff's witnesses.

4. The charge of the Court as to the measure of damages is also complained of.   The rule laid down by this Court, in *Cooper vs. Young*, 22 *Ga.*, 271, and in *Taylor & Co. vs. Collier*, 26 *Ga.*, 122, is : that if a common-carrier fails to deliver goods according to contract, and they *are lost*, he is liable for the value of the goods at the place of destination, at which he engaged to deliver them, deducting the freight. While plaintiff in error denies that the Rome Railroad Company made any special contract to deliver the cotton at Augusta, and insists that the Company was only bound to deliver it at Kingston, they say the proof as to its value in estimating the damages, should have been confined to its value at that time, in Augusta, and as there is no evidence as to the value of cotton in Augusta, there should have been no recovery. Admit that the plaintiff would have been entitled to recover what was most probably the higher price of cotton at Augus-

ta, if he had proved it, and it follows that he lost that advantage by failing to make the proof.   But we do not think that a good reason why he may not recover the lower price which it bore at Rome.   We think it safe to lay down the rule, that the commodity shipped, is presumed to be worth as much, at the point of destination, as it is at the place of shipment.   In fact it is generally worth more.   If it were not so, there would be no inducement to ship.   And the law allows the owner of the goods the benefit of that increased price, in case they are not delivered, if he chooses to avail himself of it by proof.   But if he fail to do so, and only proves the value at the place of shipment, which is not rebutted by the defendant, the latter is not injured, and has no just cause of complaint.   Indeed he is presumed to be benefitted by the plaintiff's neglect to make the proof and insist upon the full measure of his rights.

There were numerous charges asked, and given or refused by the Court in this case.   But we do not think it necessary to go into a detailed notice of them.   The points considered fully dispose of all the grounds taken in the motion for a new trial, and the ruling of the Court upon that motion, was all that was excepted to, and assigned as error in this Court.

Judgment affirmed.