THE WESTERN GRAVEL ROAD COMPANY *v.* COX ET AL.

CONTRACT.—*Speculative Damages.*—*Profits.*—Suit for work and labor in the construction of a gravel road. A counter claim was filed, claiming damages for the failure to complete the road at the date contracted, and an item specified was "the loss of tolls she might have received." This item was struck out on motion.

*Held*, that the ruling was correct, as the damages were too vague and uncertain to be ascertained.

APPEAL from the Tippecanoe Common Pleas.

WORDEN, J.—William H. Cox sued the Western Gravel Road Company for work and labor done by him for the defendant, under a written contract, in the construction of a portion of her road.

The defendant pleaded a counter claim, alleging that by the contract between the parties, the work was to have been completed within a specified time, and that the plaintiff failed

to complete the same within the time specified. The counter claim demanded damages for the failure, and specified as an item thereof "the loss of tolls she might have received," had the road been completed in accordance with the contract. This item of damages was stricken out on motion of the plaintiff, and the defendant excepted. There was a trial of the cause by the court, resulting in a finding and judgment for the plaintiff.

The defendant appeals and presents the sole question, whether the ruling was correct in striking out the item of damages above specified. The counsel for the appellant claim that the item of damages thus stricken out was legitimate and proper, and, therefore, should not have been stricken out; but they have cited no authorities upon the point.

The counsel for the appellee insist that the tolls which the road might have earned, had it been completed at the time mentioned, are too uncertain, contingent, and speculative to form the basis of damages, and, therefore, that the item was correctly stricken out; and they cite the following authorities: *Freeman* v. *Clute*, 3 Barb. 424; *Giles* v. *O'Toole*, 4 Barb. 261; *Blanchard* v. *Ely*, 21 Wend. 342; *Griffin* v. *Colver*, 16 N. Y. 489. These cases seem to us to be in point. In the case of *Giles* v. *O'Toole*, an action was brought by a lessee against the lessor for refusing to give possession of the demised premises. The plaintiff was a milliner, and had rented the premises for a shop. It was held incompetent to prove, for the purpose of showing her damages, the profits she might have made by the use of the building in carrying on her business. The case in 3 Barb. and the one in 21 Wend. are commented upon in the case in 16 N. Y., and need not be further noticed here. The case of *Griffin* v. *Colver, supra*, is said by Mr. Sedgwick to be the leading American case on this subject. Sedgw. Dam. (5th ed.) 79, note. In that case, the plaintiff had agreed to build a steam engine, with boilers, etc., for the defendants, and to deliver it to them on a certain day. He failed to do so, and

a delay of one week occurred, during which time the defendants lost the use of certain machinery for the sawing and planing of lumber, which the steam engine was intended to drive. The plaintiff having brought his action for the price of the engine, the defendants recouped their damages from the failure to deliver it at the time fixed by the contract. They gave evidence that the net average value of the use of the engine, at the place where it was located, for the purpose for which it was intended, and in connection with the defendants' machinery, was fifty dollars per day above the wear and tear and the expense of running it. The estimate was arrived at by a calculation from the quantity of lumber the machines driven by the engine would cut and plane in a day, the prices received by the defendant for planing, and the expenses of running, and the wear and tear. The referee held that this did not present the proper measure of damages, but he allowed the defendants fifty dollars, "as a proper compensation upon their investment or the value of the property which was partially unoccupied by reason of the plaintiff's default." The Court of Appeals held unanimously, in a well considered opinion, that the action of the referee was correct. The following passages from the opinion of the court, as pronounced by SELDEN, J., will sufficiently indicate the ground upon which it was decided: "The only point made by the appellants is, that in estimating their damages on account of the plaintiff's failure to furnish the engine by the time specified in the contract, they should have been allowed what the proof showed they might have earned by the use of such engine, together with their other machinery, during the time lost by the delay. This claim was objected to, and rejected upon the trial as coming within the rule which precludes the allowance of profits, by way of damages, for the breach of an executory contract.

"To determine whether this rule was correctly applied by the referee, it is necessary to recur to the reason upon

which it is founded.   It is not a primary rule, but is a mere deduction from that more general and fundamental rule which requires that the damages claimed should in all cases be shown, by clear and satisfactory evidence, to have been actually sustained.   It is a well established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance.   Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not.   Hence, in an action for the breach of a contract to transport goods, the difference between the price, at the point where the goods are and that to which they were to be transported, is taken as the measure of damages; and in an action against a vendor for not delivering the chattels sold, the vendee is allowed the market price upon the day fixed for the delivery.   Although this, in both cases, amounts to an allowance of profits, yet, as those profits do not depend upon any contingency, their recovery is permitted.   It is regarded as certain that the goods would have been worth the established market price, at the place and on the day when and where they should have been delivered.

"On the other hand, in cases of illegal capture, or of the insurance of goods lost at sea, there can be no recovery for the probable loss of profits at the port of destination.   The principal reason for the difference between these cases and that of the failure to transport goods upon land is, that in the latter case the time when the goods should have been delivered, and consequently that when the market price is to be taken, can be ascertained with reasonable certainty; while in the former the fluctuation of the markets and the contingencies affecting the length of the voyage render every calculation of profits speculative and unsafe.

" There is also an additional reason, viz., the difficulty of

obtaining reliable evidence as to the state of the markets in foreign ports; that these are the true .reasons is shown by the language of Mr. Justice Story, in the case of *The Schooner Lively*, 1 Gallis. 315, which was a case of illegal capture. He says: 'Independent however of all authority, I am satisfied upon principle, that an allowance of damages upon the basis of a calculation of profits is inadmissible. The rule would be in the highest degree unfavorable to the interests of the community. The subject would be involved in utter uncertainty. The calculation would proceed upon contingencies, and would require a knowledge of foreign markets, to an exactness in point of time and value, which would sometimes present embarrassing obstacles. Much would depend upon the length of the voyage, and the season of arrival, much upon the vigilance and activity of the master, and much upon the momentary demand. After all, it would be a calculation upon conjecture, and not upon facts.'

"Similar language is used in the cases of *The Amiable Nancy*, 3 Wheat. 546, and *LaAmistad de Rues*, 5 Wheat. 385. Indeed, it is clear that whenever profits are rejected as an item of damages, it is because they are subject to too many contingencies, and are too dependent upon the fluctuations of markets and the chances of business, to constitute a safe criterion for an estimate of damages." The opinion, after citing and commenting upon further authorities, proceeds as follows:

" From these authorities and principles it is clear that the defendants were not entitled to measure their damages by estimating what they might have earned by the use of the engine and their other machinery had the contract been complied with. Nearly every element entering into such a computation would have been of that uncertain character which has uniformly prevented a recovery for speculative profits." The opinion concludes as follows:

" The proper rule for estimating this portion of the damages in the present case was, to ascertain what would have been the fair price to pay for the use of the engine and ma-

chinery, in view of all the hazards and chances of the business; and this is the rule which I understand the referee to have adopted. There is no error in the other allowances made by the referee. The judgment should therefore be affirmed."

In addition to the above authorities cited by counsel for the appellee from the State of New York, we note the following from other states. In the case of *Waite* v. *Gilbert*, 10 Cush. 177, it was held that a common carrier who at first wrongfully refuses, but afterward delivers goods consigned to a manufacturer, is not liable for loss of profits arising from his delay.

In the case of *Rhodes* v. *Baird*, 16 Ohio St. 573, an action was brought on a contract by which the defendant agreed to make a lease for the term of ten years to the plaintiff, of certain lands on which to plant and cultivate a peach orchard. The breach consisted in the failure of the defendant to make the lease, and in his causing the plaintiff, within two years from his taking possession, to be evicted from the premises, but after the peach trees were planted. On the trial the plaintiff was permitted to give evidence of the probable profits that might in future be realized from the orchard, judging by the number of crops and the prices of peaches in the county for the last ten or fifteen years. Held, that the evidence as to the probable future profits was incompetent to be given in chief by the plaintiff, as furnishing a basis for the assessment of damages by the jury, such evidence being uncertain and speculative in its nature, and in a great degree conjectural.

In the case of *Davis* v. *Cincinnati, etc., Railroad Company*, 1 Disney, 23, it was held that where the defendant failed to deliver, in a reasonable time, a boiler constructed for a saw-mill, the profits that might have been realized, had the boiler reached its destination at the proper time, could not be recovered as damages. The court say: "The profits which might have been made, if the mill had been completed at the time it would have been had the boiler been received,

are of a character too contingent to authorize a recovery for damages."

In the case of *Cooper* v. *Young*, 22 Ga. 269, it was held, that evidence of the loss of profits by the necessary suspension of iron works, in consequence of the failure of a common carrier to deliver coal according to contract, was inadmissible in an action against the carrier for the failure to deliver in accordance with his contract.

In the case of *Taylor* v. *Maguire*, 12 Mo. 313, a party had contracted to build a boat hull, and deliver it on a stated day. He failed to deliver it until two months after the time specified. Held, that he was not liable in damages for the profits that might have been realized by the use of the boat during the two months. To the same effect is the decision in a case between the same parties reported in 13 Mo. 517. See, also, *Singer* v. *Farnsworth*, 2 Ind. 597.

In view of these authorities, we are of opinion that the loss of tolls was not a proper basis for estimating damages, and, consequently, that no error was committed in striking out the claim therefor.

The amount of tolls that would have been received could not have been ascertained with any degree of certainty, but must have been left to the merest conjecture. The amount would have depended upon the number of persons who might have travelled over it, the distance travelled by each, and the character of the vehicles and number of horses used, etc. All this is too vague and conjectural to form a proper basis for damages.

We need not indicate what would have been the proper measure of damages in such case, as the question is not before us. We are not advised what rule was adopted by the court as the proper measure, and must presume that the correct rule was adopted.

The judgment below is affirmed, with costs.

*G. O. Behm, A. O. Behm,* and *J. A. Stein,* for appellant.

*S. A. Huff, B. W. Langdon, J. S. Pettit,* and *W. C. Wilson,* for appellees.