ATLANTIC AND BIRMINGHAM RAILWAY COMPANY *v.* HOWARD SUPPLY COMPANY.

1. After there has been a full and complete constructive delivery of freight to a common carrier, according to the requirements exacted by it of shippers under a local custom prevailing at a station where it has no agent, the shipper making such delivery is entitled to a receipt for the freight, notwithstanding the carrier has previously, by mistake, issued a receipt therefor to a person not entitled to be recognized as consignor.

(a) The carrier is bound at its peril to correct its mistake before the shipment, after being improperly consigned to that person and started on its journey, is delivered to him at the point of destination.

(b) The carrier can excuse delivery to him only by showing he was in fact the true owner of the freight and asserted his claim thereto before delivery could be made to the consignee for whom the shipment was intended.

2. Where the freight charges have not been prepaid, the measure of damages to be recovered of a common carrier for failure to deliver goods in accordance with its contract is the market value thereof at the place of destination, less the cost of transportation to that point.

(a) Testimony that the goods were worth "about" a stated amount is not the equivalent of positive and unequivocal proof that the amount named was their exact value or that they were worth not less than that sum.

(b) The jury are not absolutely bound by the opinion of an expert witness touching the market value of the goods at the point of destination.

(c) The direction of a verdict in favor of the plaintiff is error, when based upon a supposition to the contrary, and especially so when he has not shown what the freight charges were or made it appear that they were prepaid.

Submitted March 3,—Decided May 16, 1906.

Complaint for damages. Before Judge Reynolds. City court of Waycross. July 3, 1905.

The Howard Supply Company brought a suit for damages against the Atlantic and Birmingham Railway Company. According to the allegations of the plaintiff's petition, one Elias Moore Jr., on

November 18, 1903, delivered to the defendant 260 cross-ties, loaded upon a car on the defendant's railroad near Beach, in Ware county, and received from the company's agent at Beach a receipt or bill of lading for the shipment, which was consigned to the Howard Supply Company at Brunswick, Ga. Upon the same day, Moore attached this receipt or bill of lading to a draft drawn on the plaintiff at Savannah, Ga., in payment of the cross-ties, which draft was subsequently paid by plaintiff. The cross-ties were delivered to the defendant company by Moore upon the order of the representative or agent of the plaintiff, and the cross-ties, by delivery to the railway company, then and there became the property of the plaintiff, to be transported on its line of railway to Brunswick, Ga. The market value of the cross-ties was at that time 44 cents each, or $114.40 for the entire shipment. They have never been delivered to the plaintiff, although they have been demanded of the defendant.

The defendant answered, that for want of sufficient information it could neither admit nor deny the allegations on which the plaintiff relied for a recovery, but that it was not liable to the plaintiff in any amount. On the trial, Moore, the consignor, testified: The cross-ties belonged to him, and he sold them to Silas King, who was representing the Howard Supply Company. King gave him a draft on his principal, which, when attached to the railroad receipt or bill of lading, was to be in payment of the purchase-price. Witness and King went to Beach to get the railroad receipt or bill of lading for the ties. The former had loaded the ties on a car on the company's railway at Murray's. It being a "non-agency" station, witness had to go to the next station to get a receipt or bill of lading, and was accompanied to Beach by Silas King. When they arrived there the agent in charge of the company's office at that point advised witness that the car-load of ties for which the bill of lading was asked had been shipped from Murray's by one Max Ehrlich, consigned to himself at Brunswick; that the car was then en route to that city via Waycross, the route then used by the defendant company, but that he (the station agent) would endeavor to intercept the car before it reached Waycross and get the matter straight; and that if witness would call the next day, the agent would give him a bill of lading or receipt for the ties, if he intercepted the car and got the matter straight. Witness called the next

day on the agent at Beach and asked if the matter had been straightened out; the agent said it was all right, and then and there issued to witness the bill of lading, which he thereupon attached to the draft drawn on the plaintiff. This draft, which was for the sum of $68.68, was afterwards paid. The market price of the ties in Brunswick was at that time about 44 cents each. The defendant called as a witness its station agent at Beach, who testified that he had no recollection of the transaction; that Murray's was a "non-agency" station, and upon cross-ties being shipped from there the conductor would give his receipt or a bill of lading for the shipment, or, upon application to the agent at Beach, a bill of lading covering a shipment of ties from Murray's would be issued. A paper purporting to be a freight receipt issued at Beach Station, "11/18/1903," to Elias Moore Jr., signed in the name of this agent and covering a shipment of 260 cross-ties consigned to the Howard Supply Company, at Brunswick, Ga., was introduced by the plaintiff, as was also the draft above referred to. The defendant company offered as a witness Max Ehrlich, who testified that he bought the cross-ties in question from J. and E. Moore at Murray's, and shipped same from there on December (?) 17, 1903, consigned to himself at Brunswick, obtaining a receipt from the conductor and also a bill of lading therefor from the agent at Waycross; and that while he (the witness) afterwards learned that the ties were claimed by Elias Moore Jr., and as having been sold by him to the Howard Supply Company, they belonged to witness under his purchase, as aforesaid, and he sold them for his own benefit. The court ruled out the testimony of this witness, and directed a verdict in favor of the plaintiff for the amount sued for. Exception is taken by the railway company to the exclusion of the evidence which was ruled out by the court, and error is also assigned upon the direction of a verdict and the refusal of the court to grant the company a new trial.

*Rosser & Brandon, J. L. Sweat,* and *Walter T. Colquitt,* for plaintiff in error. *Max Isaac,* contra.

EVANS, J. (After stating the facts.) 1. Under the proved custom touching the shipment of cross-ties from Murray's, at which station the railway company had no agent, there was a constructive delivery of the shipment by Elias Moore Jr., to the defendant, before he applied to its agent for a receipt or bill of lading. *Wilson*

v. *A. & C. Ry. Co.*, 82 *Ga.* 389, and cit. Shippers were invited to load cars at that "non-agency" station, and to take a receipt from the conductor of the train when the cars were started on their journey, or, after loading a car, to go to the station at Beach and get a receipt for it from the agent at that point. The custom was a loose one and subjected the company to the risk of imposition and incident loss; for it. was bound to keep itself informed as to the persons who made delivery to it by loading its cars at Murray's and to issue its receipts to those persons instead of others who were not entitled thereto. Its conductor made a mistake of fact when he recognized Ehrlich as the person entitled to a receipt for the car-load of ties which had been loaded by Elias Moore Jr., and who was doubtless then on his way to Beach to get a receipt from the agent there, after having complied with every requirement exacted by the railway company respecting due delivery to it of the shipment. The agent appreciated the fact that a mistake had been committed, and undertook to intercept the car before it reached Waycross and "get the matter straight." The car was then in the actual, physical custody of the defendant railway company, on the way to its proper destination, and the only matter to be gotten "straight" was the predicament in which the company found itself, brought about by the act of its conductor in giving a receipt to a person other than the one who had parted with his actual possession of the ties upon the implied assurance of the company (*Ga. So. R. Co.* v. *Marchman*, 121 *Ga.* 235) that it would accept loading of them on its cars as the exact equivalent of actual delivery to it for shipment and would hold them subject to his directions as to destination, etc., till he could get into touch with its agent at Beach and procure a receipt or waylay a passing conductor to whom such directions could be given and from whom he could get a receipt. When Moore called for his receipt, he was entitled to get it irrespective of whether the agent could "get the matter straight" or not by intercepting the car before it reached Waycross; and when the agent actually gave the receipt, he was acting within the scope of his duties, and not with reference to a past transaction. See *Hematite Mining Co.* v. *E. T., V. & G. Ry. Co.*, 92 *Ga.* 268. The company was bound at its peril to "get the matter straight" before delivery was made in Brunswick to Ehrlich. The record discloses that he claimed the shipment at that point, that it was turned over

to him, and that he disposed of it for his own benefit. The company committed its second mistake in suffering delivery to be made to him after notice to it that a receipt and bill of lading had been improperly issued to him instead of to the person whom it was bound to recognize as the true owner and real shipper of the ties. After Moore made delivery to the company in the manner designated by it, i. e. by loading the ties on one of its cars at Murray's, the carrier was not at liberty to excuse failure to deliver to his consignee on the ground that Moore did not have title to the ties, unless some third person who was in fact the true owner interposed and asserted his claim before delivery to the consignee could be made. Civil Code, §2286; *Carler* v. *Southern Ry. Co.,* 111 *Ga.* 40. And even though Ehrlich may have vigorously asserted his claim to the ties after they reached Brunswick, in making delivery to him the company took the risk of being held liable to Moore or his consignee in the event Ehrlich was not in fact the true owner. He does not appear to have been such. According to his testimony, he bought the ties from parties who claimed to be the owners thereof, but who, so far as he knew, had never been in possession of the ties nor really had any title to or interest therein. The ruling out of his testimony was therefore eminently proper, since it afforded no excuse for failure to deliver the ties to the Howard Supply Company, the consignee designated by Moore, who was, as already remarked, the person the company was bound to recognize as true owner and shipper until some one else appeared who asserted a superior claim of title.

2. The suit was one by a consignee to recover damages for neglect on the part of a common carrier to comply with its legal duty to make delivery of freight in accordance with the terms of a contract of affreightment made in behalf of the plaintiff, which was alleged by way of inducement. As a general rule, the measure of damages for failure to perform such a contract is the value of the shipment at the place of destination, less the cost of transportation to that point. *Cooper* v. *Young,* 22 *Ga.* 271; *Taylor* v. *Collier,* 26 *Ga.* 122; *Rome R. Co.* v. *Sloan,* 39 *Ga.* 641; *Wilson* v. *Ry. Co.,* 82 *Ga.* 391. Unless the freight charges were prepaid, which does not appear to be the case, the plaintiff was not entitled to recover the full market price of the ties in Brunswick at the time delivery of the shipment ought to have been made. Nor was there any admission

by the defendant as to what was the market price of the ties in Brunswick at that time, nor did the proof submitted by the plaintiff demand a finding that the ties were then worth in the Brunswick market precisely the amount sued for. The only evidence offered on the subject was the testimony of Moore, the consignor, who testified that he received in payment for the ties a draft for $68.68, which was afterwards paid by the plaintiff; that the "ties were worth at the time from thirty to thirty-five cents per tie, delivered on the road, and the market price in Brunswick was *about* forty-four cents at the time." Testimony that a particular article is worth "about" a particular amount stated is not to be regarded as positive and unequivocal proof that the article has a value of that exact amount in the market (*Equitable Mortgage Co.* v. *Watson,* 116 *Ga.* 683), but merely as an expression of an opinion which' is not altogether precise and definite. Very liberal rules obtain with respect to allowing proof of market value to be made by the opinion of witnesses who profess to be acquainted with prevailing market prices and who are sufficiently expert to be able to properly grade products and pass upon their quality and market worth. *Central R. Co.* v. *Skellie,* 86 *Ga.* 692-694. But it is a mistake to suppose that the opinion of an expert witness on the subject is absolutely binding on the jury, and it is error to direct a verdict upon any such supposition. *Baker* v. *Richmond Works,* 105 *Ga.* 225. Such an error was committed in the present case.

*Judgment reversed. All the Justices concur.*