## ALBANY AND NORTHERN RAILWAY COMPANY v. MERCHANTS AND FARMERS BANK.

1. A contract of carriage of certain cotton received by the A. & N. Ry. Co., at Warwick, Ga., a station on the defendant's line of railroad, "consigned to O/N [order notify] E. L. Harper, Savannah, Ga., via Cordele compress," was a through bill of lading and bound the railroad to deliver the cotton at Savannah, Ga., the destination mentioned in the bill of lading,. notwithstanding a stipulation in the bill of lading that "this company shall not be responsible as common carriers of said property beyond its line of road," it not appearing that the shipper of the cotton had expressly assented to the stipulation.

2. The suit in this case was one ex contractu; and for a breach of the contract the plaintiff was entitled to sue for damages arising therefrom, in the county where the contract was executed.

3. As a general. rule no demand is necessary to the commencement of an action founded on a breach of contract. And where a so-called demand for cotton was made by the transferee of an "order notify" bill of lading of a railroad company (which thereby agreed to transport certain cotton from and to named points within the State), before it was indorsed by the one having the legal title thereto, such demand can not be the basis for the ascertainment of the damages for a breach of the contract of carriage.

(a) And the direction of a verdict by the trial judge in favor of the plaintiff on the basis of a suit brought by the transferee to recover damages and interest from date of demand for failure to deliver cotton by virtue of the terms of the contract contained in the bill of lading, before its indorsement, is reversible error.

4. Parol testimony is not admissible on the trial of a case brought to recover damages growing out of an alleged breach of contract for failure to deliver cotton at the point of destination named in the bill of lading, to prove a custom of stopping cotton short of the point of destination for purposes at variance with the plain, unambiguous terms of the contract of carriage.

5. When a common carrier fails to deliver goods according to the terms of the contract, the measure of damages is the value of the goods at the time and place at which it is agreed to deliver them, less the transportation charges.

JANUARY 11, 1912.

Complaint. Before Judge Frank Park. Worth superior court. February 2, 1911.

The Merchants and Farmers Bank, a banking corporation organized under the laws of Georgia and doing business at Cordele, Georgia, filed its petition in Worth superior court against the Albany & Northern Railway Company, a railroad corporation operating a line of railroad through the town of Warwick in the county of Worth, and being a common carrier, and alleged the following

facts: that the contracts hereinafter set forth were made in Worth county; that the Albany & Northern Railway Company (hereinafter called the defendant) damaged the Merchants and Farmers Bank (hereinafter called the plaintiff) in the sum of $5,000, by reason of breaches of contract as hereinafter set out; that on or about the 8th day of September, 1904, the defendant contracted with one John F. Wise, in the county of Worth, for the consideration of 41½ cents per 100 lbs., which the said Wise contracted to pay, that the defendant would carry or cause to be carried from the town of Warwick to the city of Savannah, in the State of Georgia, 3 bales of cotton and would deliver the same or cause the same to be delivered in the city of Savannah to the said Wise, or to any person to whom the said Wise should transfer, indorse, assign, or deliver the bill of lading or receipt issued to him by the defendant for said cotton only upon the production and surrender of said receipt or bill of lading. It was further alleged that the defendant, for the same consideration per 100 lbs. above expressed, agreed to carry 40 other bales of cotton from Warwick to the city of Savannah and deliver said cotton to said Wise or to any person to whom said Wise should transfer, assign, indorse, or deliver the receipt or bill of lading as above set forth with reference to the 3 bales of cotton; that said Wise delivered the 43 bales of cotton to the defendant at the town of Warwick, a station upon defendant's line of railroad, and defendant received and accepted the cotton to be carried and delivered in accordance with its contracts; that defendant issued to said Wise receipts and bills of lading for the cotton; that afterwards the receipts and bills of lading were transferred and assigned to the Merchants and Farmers Bank, the plaintiff in this case, in pledge, as security, for the sum of $5,000, which the plaintiff advanced to one E. L. Harper, to whom the said Wise had agreed to sell the cotton for cash upon delivery of the cotton; that this sum was advanced by the plaintiff upon agreement between the plaintiff and Harper that the right and title to the cotton should be held by the plaintiff as security for said sum; that no part of the sum advanced, or the interest thereon, had been paid to the plaintiff; that the defendant had violated its contract by failing to carry and deliver the cotton as provided by the contract, although the plaintiff had tendered the bills of lading properly indorsed, and said cotton had been entirely lost to the

plaintiff; that the value of the cotton at the time it was so lost was more than the amount of the sum advanced by the plaintiff, to wit, $5,000. The bills of lading were the same, except that one was for three and the other for forty bales of cotton. A copy of only one, therefore, follows: "Bill of Lading for Forty Bales. Albany & Northern Railway. Warwick, Georgia, Station 9/8, 1904. Received from John F. Wise the following property in apparent good order (or condition noted), contents and value unknown, to be transported over the road and delivered in like manner to consignees or the next company or carriers (if the same is going beyond its line of road) for them to deliver to the place of destination of said property, it being distinctly understood that this company shall not be responsible as common carriers of said property beyond its line of road or while at any of its stations awaiting delivery to such carriers—the company being liable as warehousemen only. Subject to all the conditions embraced in the company's bill of lading, for which receipt should be exchanged. Consigned to O/N E. L. Harper, Savannah, Ga. Via Car Cordele, Compress. Charges advanced, $————. Marks and numbers, D-91 to 100 inc. E-1 to 30 inc. Articles 40 B/C. Weights subject to correction 21454. J. R. Davis for the Company." This bill of lading was indorsed by E. L. Harper on Sept. — 1904, and by John F. Wise on Sept. 6, 1906. The defendant by its answer admitted that it received the cotton sued for and issued its bills of lading therefor upon the terms and conditions set out in the contract. It averred that it had fully kept and carried out every obligation assumed by it in connection with said cotton. All the other material allegations of the petition were denied. Under the evidence submitted to the jury, the presiding judge directed a verdict in favor of the plaintiffs, upon which judgment was duly entered against the defendant. The Albany & Northern Railway Company filed its motion for a new trial, which was overruled, and the defendant excepted.

*F. A. Hooper, J. H. Tipton,* and *Pope & Bennet,* for plaintiff in error. *John R. L. Smith, J. T. Hill, Perry, Foy & Monk,* and *W. A. Thompson,* contra.

HILL, J. (After stating the foregoing facts.)

1. The decision of this case centers in the determination of the following questions made by the record: Were the bills of

lading in this case through bills of lading? (*a*) Is this a suit ex contractu,—and if so, has the court of the county where the contract was made jurisdiction to try the suit filed for the alleged breach of the contract? (*b*) Was the demand at Cordele such as that a failure to produce the cotton at that point at the time of the first demand constituted a breach of the contract and a basis for recovery of damages for the breach of the contract, with interest from that date? (*c*) Was Cordele, or Savannah, the proper place to make the demand, and delivery of the cotton? (*d*) Can the contract of carriage be varied by parol testimony to prove a custom to stop cotton at Cordele (which was billed to Savannah) for purposes of compression, sale, etc.? (*e*) What is the measure of damages for breach of a contract consisting of failure to deliver cotton at point of destination?

The allegations in the plaintiff's petition were, and the evidence showed, that one John F. Wise tendered 43 bales of cotton at Warwick, in Worth county, to defendant's line of railroad to be transported to Savannah, Ga., consigned to "order notify" E. L. Harper, "via Cordele Compress," and that the cotton was received by the defendant and a receipt or bill of lading given therefor, which bill of lading is set out in the facts above recited. By the terms of the bill of lading or contract the cotton was "to be transported over the road and delivered in like manner to consignees or the next company or carriers (if the same is going beyond its line of road) for them to deliver to the place of destination of said property, it being distinctly understood that this company shall not be responsible as common carriers of said property beyond its line of road or while at any of its stations awaiting delivery to such carriers—the company being liable as warehousemen only. Subject to all the conditions embraced in the company's bill of lading, for which receipt should be exchanged. Consigned to O/N E. L. Harper, Savannah, Ga. Via Cordele Compress," etc. We hold that the above contract of carriage was a through bill of lading, by which the carrier was bound to deliver the cotton at Savannah, the point of destination named, notwithstanding the stipulation in the bill of lading itself that the carrier would not be responsible beyond its own line of railroad. Civil Code (1910), § 2726. This court has held, in the case of *Atlantic Coast Line R. Co.* v. *Henderson,* 131 *Ga.* 75,

81 (61 S. E. 1111), and in numerous other cases, that a carrier might by contract limit its liability to its own line of road, but it could not do so by a mere stipulation in the bill of lading, unless the latter was expressly assented to by the shipper. See, also, *Central R. Co.* v. *Hasselkus,* 91 *Ga.* 382, 390 (17 S. E. 838, 44 Am. St. R. 37). As no such express contract appears in this case between the plaintiff and the defendant, but instead a mere stipulation in the bill of lading that the defendant will not be responsible beyond its own line, the defendant would be liable in damages if it be shown that it has failed to deliver the cotton at the point of destination in good order.

2. This is a suit ex contractu, growing out of the above contract or through bill of lading and the alleged breach thereof. The contract was executed at Warwick, in Worth county, and the plaintiff brought suit in Worth superior court. It is insisted before this court that the superior court of Worth county did not have jurisdiction to try the case. The court of the county where such a contract as the above was executed has jurisdiction, and the plaintiff had the option of waiving the tort and suing ex contractu. *Friedman* v. *Seaboard Air-Line Ry.,* 124 *Ga.* 472 (52 S. E. 763); *Bates* v. *Bigby,* 123 *Ga.* 728, 729 (51 S. E. 717); *Central R. Co.* v. *Brunson,* 63 *Ga.* 504; Civil Code (1910), § 2798.

3. The demands for the cotton were made at Cordele: the first in October, 1904, the latter on September 18, 1907. At the time of the first demand the bill of lading for the 40 bales of cotton was not indorsed by Mr. Wise, the consignor. Plaintiff's first demand, therefore, was not good as to the 40 bales of cotton until the bill of lading had been properly indorsed so as to put the legal title in the plaintiff. In order to entitle the plaintiff to sue, it must have had the bill of lading properly indorsed, so as to give it the legal title thereto and the consequent right to sue as the indorsee or assignee of the bill of lading for any breach of the contract. It follows, therefore, that the verdict directed for the plaintiff on the basis of the first demand for the cotton at Cordele in October, 1904, before the bill of lading was properly indorsed, was reversible error. The plaintiff had no right at that time to make demand, much less to sue in its own right, for the 40 bales of cotton. *Haas* v. *Kansas City &c. R. Co.,* 81 *Ga.* 792 (7 S. E. 629). The contract specified that the cotton should be

delivered at Savannah, and we hold that it should have been delivered there. There are authorities to the effect that under certain circumstances, where a refusal by one party to a contract to comply with it on the demand of the other party is based on a specified ground, after suit upon the contract he will not be allowed to "mend his hold" and set up other grounds why he might have refused, thus taking advantage of the other contracting party, who might have removed such grounds at the time had they been made. But this is different from the case of a person who has no title to a chose in action at the time he makes a demand, but subsequently acquires it. If he was not authorized to sue for a breach of the contract at all at the time of the demand, but subsequently became the transferee of it, his right to sue, thus acquired, would not date back so as to authorize him to recover as of the date of the demand so made, with interest therefrom. It is to be noted that this is not a suit by the bank in trover, or in tort as pledgee, but is an action based on the contract; and that whatever may have been its rights with respect to the cotton as security for the draft held by it, it was not the transferee of the bill of lading, and therefore was not entitled to sue for a breach of it until such transfer or indorsement of it was made.

It is also insisted that the failure of the defendant railroad company's agent at Cordele to deliver the cotton on demand was not based on the failure of the plaintiff to deliver the bill of lading properly indorsed or assigned, but solely on the ground that he did not have the cotton. Whatever the ground upon which the first refusal to deliver the cotton was based, the agent was certainly within his rights and those of the carrier in refusing to deliver the cotton to the plaintiff as the transferee until the bills of lading were properly indorsed. He may have given the wrong reason, but the right conclusion, so far as the 40 bales are concerned. This applies, of course, to the refusal of the first demand for the 40 bales of cotton, upon which the directed verdict was predicated.

In discussing the question of demand for the cotton in this case, it is not to be understood that we hold that a demand is necessary in cases of breach of contract and suit for damages therefor. The general rule is that no demand is necessary to the commencement of an action for a breach of contract, and the exception in such cases is where the law or the contract so prescribes. Civil

Code (1910), § 5512. We have been dealing here with the question of demand solely in connection with the direction of the verdict by the court on the basis of the first demand for the cotton at Cordele, when the bill of lading had not been properly indorsed, and with the measure of damages in connection therewith.

4. The custom of the trade, insisted upon, refers to the custom "at destination." Civil Code (1910), § 2730; *Ga. & Ala. Ry.* v. *Pound,* 111 *Ga.* 6 (36 S. E. 312). And this is so notwithstanding a custom to stop cotton billed to Savannah at Cordele for compression, &c. Parol evidence of usage and custom to vary the terms of a plain, unambiguous written contract is not admissible. If the bill of lading constituted a through contract of carriage, its efficiency could not be destroyed by parol testimony, or by a custom in conflict with the contract. Civil Code (1910), § 5778; *Park* v. *Piedmont &c. Ins. Co.,* 48 *Ga.* 601; *Merchants Bank* v. *Demere,* 92 *Ga.* 735, 740 (19 S. E. 38); *Western & Atlantic R. Co.* v. *Ohio &c. Co.,* 107 *Ga.* 512 (33 S. E. 821).

5. What is the measure of damages in this case? In directing the verdict for the plaintiff the court made the demand at Cordele and the delivery of the cotton there on that date (October, 1904) the basis of the verdict directed. We do not think that the value of the cotton at Cordele on the date of the first demand at that place was the correct measure of damages in this case. As the bill of lading specified that the cotton should be delivered at Savannah, we think the measure of damages which the plaintiff is entitled to recover, if at all, is the value of the cotton at the time and place of delivery, less the freight, if it has not been paid. The general rule as to the measure of damages is, that if a common carrier fails to deliver goods according to contract, it is liable for the value of the goods at the time and place at which it engaged to deliver them. *Cooper* v. *Young,* 22 *Ga.* 271 (68 Am. D. 502), and citations; *Taylor* v. *Collier,* 26 *Ga.* 122, 126; *Rome R. Co.* v. *Sloan,* 39 *Ga.* 641; *Atlantic Coast Line R. Co.* v. *Howard Supply Co.,* 125 *Ga.* 478, 482 (54 S. E. 530). Cordele was neither the initial shipping point nor the terminus specified in the bill of lading at which the delivery of the cotton was to be made. In the case of *Rome R. Co.* v. *Sloan,* supra, there was proof of the value of the cotton at Rome, the initial point, and the trial judge in that case had charged the jury that "the measure

of damages is the value of the cotton at the time and place of its destination, or at any place from the point of shipment to the place of delivery, plus interest." This court, in reviewing the above as an assignment of error, held that this charge was inaccurate, but harmless error under the facts in that case, and the finding of the jury was allowed to stand. Without entering into a discussion of the basis on which the above ruling was made, it is perhaps sufficient to say that in the present case the verdict was directed by the presiding judge on the basis of the value of the cotton at Cordele, which was an intermediate point of shipment. No error appears in any of the other grounds of the motion for a new trial.                *Judgment reversed. All the Justices concur.*