Nott, J.,
delivered the opinion of the court:
This is an action upon an army transportation contract, and the damages are laid at $60,864.21.
The contract was for the transportation of army supplies upon the western plains, and the court must look to the object of the contract and the circumstances amid which it was made, to construe it aright and ascertain the true intent of the parties.
The first article of the contract provides that the claimant u shall receive at any ti7nev ufrom April to September,” 1865, “ all *547 such military stores and supplies as may he offered or turned over to him for transportation,” “ and transport the same with ail practicable dispatchThe second article binds the claimant u to transport under this agreement ” “ any member of pounds of military stores and supplies from and between 100,000 and 10,000,000 in the aggregated The eleventh article binds the defendants that the claimant “ shall transport all the military stores and supplies for which the Quartermaster'’s Department may require transportation ” “ during the year 18(35, provided the loeight of such military stores and supplies shall not exceed in the aggregate 10,000,000 pounds,” with a furthet proviso that the defendants may use their own means of transportation whenever deemed advisable.
The contract, therefore, was not an agreement for the transportation of 10,000,000 pounds or less of military stores; but was an agreement for the transportation of “ all the military stores and supplies for which the Quartermaster’s Department may require transportation” “ during the year 1865,” with a condition in favor of the claimant that he should not be required to carry less than 100,000 pounds, nor more than 10,000,000 pounds in the aggregate, and with a like condition in favor of the defendants that they should not be bound to furnish him, of the stores they might need to transport, more than 10,000,000 pounds, nor any that they might prefer to convey by their own means of transportation.
Under this contract, it was the right of the parties to waive respectively the conditions inserted for their protection. If, for example, the freight tendered to the claimant was but 50,000 pounds, and he carried it, the carriage would be a service under the contract, subjecting him to all of its restrictions and responsibilities. Conversely, if the freight tendered and conveyed exceeded 10,000,000 pounds, the defendants were bound by all the other terms of their agreement. Whether the service rendered was for less than the minimum or more than the maximum, it was still service rendered under the contract, so long as it related to u military stores and supplies for which the Quartermaster’s Department may require transportation ” u during the year 1865.”
So far it is apparent that the contract imposed no obligation upon the defendants to furnish any specific amountof freight, but only that for which the Quartermaster Department might re *548 quire transportation; anil no breach could be alleged by the claimant unless the freight contemplated was actually diverted from him'and given to another contractor. The object was not the transportation of 100,000 pounds of freight or more, nor of 10,000,000 pounds or less, but of “ all the military stores and supplies for which the Quartermaster’s Department might require transportation ” u during the year 1865,” and the claimant participated in the risks growing out of the uncertainty of the amount as fully as the defendants. (Grant’s Case, ante, p. 53.)
But there is another provision in the contract. The fourth article provides that, uin order that” the claimant “ shall be in readiness to meet the demands and requirements made upon him for transportation under this agreement, due notice shall be given him or his agent of the quantity and. hind of stores to be transported at any one time, at what points the stores will be ready for delivery to him, and the place of their destination and the contract then proceeds with great particularity and care to designate the length of the notices that shall be given for different quantities of freight to be carried. It is, therefore, further apparent that, without this notice, the claimant was not bound to take any step toward the fulfilling of his contract; while the giving of the notice threw upon him the obligation of being in readiness to transport the specified freight, provided, of course, that it came within the limitations of the contract. Undoubtedly the defendants could not give this notice wantonly and be clear of all the consequences. Undoubtedly their giving the notice threw upon them some reciprocal responsibility. Was that responsibility an obligation to furnish the freight notified of, irrespective of the requirements of the Quartermaster Department; or to respond in damages for such needless loss as they may have cast upon the claimant ? In other words, it is a simple question as to what should be the measure of damages.
The law contemplates, in cases of contracts broken, two elements of damage: first, “ losses sustained;” and, second, “ gains jmevented.” Griffin v. Colvin, (16 N. Y. R., p. 494.) In this case it is manifest that there have been losses sustained. It is not so clear that there have been gains prevented.
If the parties had contracted for a specific amount, the profits on that amount would have been the inducement to the claimant, and the parties would be deemed to have contemplated *549 those profits as the measure of damages when they made the contract. But, as we have seen, they did not contract for a specific amount, but for such, unknown amount as the uncertain exigencies of military affairs might require. In that uncertainty, within certain bounds, the claimant agreed to share.
The claimant was notified, pursuant to the terms of the contract, to transport certain specified quantities of freight between certain specified points. In one instance the quartermaster alluded by letter to the fact that 10,000,000 pounds of freight had already been transported, and requested the claimant to notify him uifhe was prepared to transport this additional freight.” In reply, the claimant notified the quartermaster of his willingness. In the other instances, no special correspondence passed between the parties, but the notices were ordinary requisitions, made under the contract. In all instances, the claimant made all needful preparations, and held himself in readiness to perform. A part of the freight for each route was delivered, and a part withheld. In fact, the necessity for sending the freight suddenly ceased, and the transportation thereof would have been needless and improper. Ought we to hold that, as between the contracting parties, the defendants were still bound to send it, and that, “ in contemplation of the parties when they made the contract ,” which is the test the law imposes, there have been gains prevented, when no freight was in fact transported, and none required?
It has been termed a “ cardinal principle ” that “ the plaintiff must shoio himself to have sustained damage, or, in other words, that actual compensation will only he given for actual loss.” (Sedgwick, Mea. Dam., p. 223.) Here the claimant has sustained damage, and for that he should be compensated; but he should not recover an actual compensation for profits under the contract unless, within the contemplation of the contract, there was an actual loss of profits.
The rule which I think should govern the case may be thus stated: Where the defendants have violated their contract through its entire scope, so that the contractor has been deprived of profits which he might have made within the contemplation of the parties when they made the contract, there he should recover his gains prevented as well as losses sustained. But where the defendants’ breach relates to a minor matter in the contract, and has merely thrown upon the contractor need *550 less expense, there he should recover only the damage which he has actually sustained.
The evidence in this case shows clearly enough that the defendants’ officers gave notices under the contract, at various times, for the transportatiou of specified quantities of freight to four designated points, and that of the freight whereof the claimant was thus notified there was withheld—
Pounds.
From Leavenworth to Fort Kearny. 591,308
From Leavenworth to Laramie. 043, 725
From Leavenworth to Denver. 168,296
From Leavenworth to Salt Lake... 286, 765
It also appears that the claimant prepared and was ready to transport' this freight, and that, from being required to prepare to perform, he has suffered actual damage. But the case has been tried upon the theory that the profits which might have been made, had the freight been furnished, constitute the true measure of damages, and therefore the actual losses sustained have not been shown.
The case will be remanded to the trial docket, with leave to the parties to furnish evidence upon that specific point, viz, the amount of losses actually sustained by the claimant, in accordance with the principle indicated by this opinion. Should,' however, the claimant prefer to stand upon, the theory upon which the case ivas tried, and elect, within thirty days, to carry it to the Supreme Court in its present form, the order now to be entered will be vacated, and the findings of the court will be filed and judgment entered dismissing the petition.
The order of the court is that the case be remanded to the trial docket, to remain there without further notice- by the parties, and with leave to either party to take testimony and furnish evidence as to the amount of the claimant’s actual damages caused by the defendants, in accordance with the opinion of the court.