Peelle, J.,
delivered the opinion of the court:
This action grows out of defendants’ failure, for a time, under their contract to furnish in the city of Chattanooga, Tenn., a site upon which the claimants had agreed to erect, within twenty-two months, a court-house and post-office building.
Upon the execution of the contract the claimants, in making the necessary arrangements to begin and complete the work thereunder, among other things, entered into the subcontract set out in the findings, with the Hercules Marble Company, of Knoxville, Tenn., a solvent corporation, whereby it agreed for the consideration of $68,500 “ to furnish at their own cost and expense all the marble materials, workmanship, machinery,” etc., “necessary for the construction and final completion of all the exterior marble-work in the superstructure (that is to say, the outer walls from the foundation up), including pier blocks and bearing stones of the building, and to set the same in proper position in said building, all according to drawings, specifications, and descriptions furnished by the Supervising-Architect of the Treasury Department,” etc.
Immediately upon the execution of this subcontract, the Hercules Marble Company purchased machinery and made all other necessary arrangements to begin work, and within three months from the date thereof began to quarry and saw marble as required by the terms of the contract; and for this purpose it sawed into the required dimensions several thousand cubic feet of marble.
But by reason of the defendants’ failure to procure and make ready the site as aforesaid, it was prevented from the execution of its contract, in setting thé marble so quarried and shaped *372 “in proper positions in said building.” And being tbus prevented from tlie execution of its contract, it was thereby prevented from receiving any money from the claimants for the marble so quarried and sawed, as by the fourth paragraph of the contract, payment was only to be made to it at the times and in the manner the defendants had contracted to pay the claimants.
This delay on the part of the defendants continued until January 27,1890, or nearly a month after the time within which the Hercules Marble Company had agreed to have its work completed.
Receiving no money on its contract, it became financially embarrassed, and although furnishing marble for about four months after the work actually began, it failed in its undertaking to supply the residue of the marble so contracted for, by reason of which the claimants were compelled to go into the open market and purchase 20,309 cubic feet of marble of other companies at an enhanced market price of about 25 cents per cubic foot.
The consideration agreed to be paid to the Hercules Company was a lump sum for all the marble “ set in proper position in said building,” aiid there is nothing to show the cost of the marble and the freight thereon exclusive of the cost of setting “in proper position in said búilding,” and the court can not therefore assume that the cost of the marble so contracted to be furnished was below the market price; so the court has found that the difference between the market price at the time of the contract with the company and the time when the claimants were compelled to purchase in the open market, was 25-cents per cubic foot, or $5,077 difference on the marble so purchased, and this we think is the measure of the claimants damage in this respect if they are entitled to recover.
A period of more than thirteen months elapsed from the date of the contract with the defendants before they procured and made ready the site for the building, during which time the claimants were required to keep themselves in readiness to begin work, and did so keep themselves, by reason of which they necessarily incurred an expense of $780 for office rent and clerk hire.
In addition thereto the claimants suffered the loss of their time as superintendents in the construction of like buildings,. *373 which was reasonably worth $500 per month for both, or $6,000 per year, besides being prevented from taking other contracts for which opportunities were offered.
The question of law presented is, are the defendants liable under their contract for the damages thus suffered by reason of their failure to procure and make ready the site upon which the claimants had agreed to erect the building?
When the contract was entered into it was doubtless the-purpose of the defendants to proceed at once to procure and make ready the site for the building.
By the terms of the contract the claimants agreed, in consideration of $196,775 “to furnish all the labor and materials required to erect and complete” the building within twenty-two months from the date of the contract; and on the part of "the defendants it was agreed that if “through any fault” of theirs the claimants should be delayed in the execution of the work and thereby prevented from completing the same within the time stated, they should “be allowed one additional day to the time above stated for each and every day of such delay as ascertained by the party of the first part.”
It was also agreed on the part of the claimants that if they should fail to comply with the terms of the contract in respect to the time within which the work was to be completed they .should forfeit $100 per diem for ea'ch and'every day thereafter until the compietion of the contract, etc.
Therefore, to enable the claimants to complete the work under their contract within the time specified, and thereby avoid the forfeiture, they were to have one additional day thereto for every day they were delayed through any faultof the defendants.
But this recompense, in respect to time, was not intended to be in lieu of damages which the claimants-might suffer by reason of such delay, nor can the language be so construed.
The provision is in the nature of an indemnity to the claimants against delay in the execution of their contract “through; any fault” of the defendants.
The claimants entered into the contract, agreeing to furnish, all the labor and materials necessary and to complete the erection of the building within twenty-two months, and on th¿ faith of the contract incurred expense and otherwise made the necessary arrangement to perform their contract, keeping themselves in readiness therefor, as required by the defendants.
*374 Tliis imposed upon, tbe defendants the corresponding duty of doing whatever was necessary on their part to enable the claimants to comply with their contract. This is the rule as laid down in the case of The United States v. Speed (8 Wall., 77, 84).
If the defendants had annulled the contract the measure of damages would have been, as stated in the Speed Case (supra), “the difference between the cost of doing the work and what claimants were to receive for it, making reasonable deductions-for the less time engaged, and for release from the care, trouble, risk, and responsibility attending a full execution of the contract.” (Masterton v. Brooklyn, 7 Hill, 62.)
But the contract was not annulled by the defendants, nor did the claimants elect to rescind it; on the contrary, the claimants elected to await the action of the defendants and, when opportunity presented, proceed to comply therewith.
This they did, and completed the work to the satisfaction of the defendants.
It is well settled that for any improper interference with the work of a contractor the United States, like individuals, are liable. (AUnited States v. Smith, 94 U. S., 214, 217, and authorities there cited.)
The subcontract with the Hercules Company was made in-good faith, nothing is shown to the contrary, and with the reasonable expectation that the defendants would so comply with their contract with the claimants as to enable it to proceed to furnish the marble and set the same “ in proper position in said building” within a reasonable time.
This the defendants failed to do for a period of more than 'thirteen months from the date of their contract, which was an unreasonable delay, and the claimants are therefore entitled to recover for the enhanced market cost of material which occurred during this period.
This, we think, would be true whether the claimants had entered into the subcontract with the Hercules Company or not, for while in contracts of this magnitude prudence would seem to dictate the wisdom of making subcontracts in advance for tho necessary materials, yet a contractor failing to do so would not thereby be estopped from recovering damages for the enhanced cost of material growing out of the defendants’ delay.
So in this case the claimants’ damages in this respect we have *375 measured by the difference between tbe market price of the marble at the time the subcontract was entered into and the time when the claimants were compelled to purchase in the open market the residue of the marble required.
Had the claimants so elected, they might, after the defendants’ failure within a reasonable time to make ready the site for the building, have rescinded the contract and recovered the value of the services actually performed as upon a quantum meruit.
The rule on this subject, as well as where damages are sought, for the breach of a contract, was stated in the case of The United States v. Behan (110 U. S., 338, 345) affirming the decision of this court (18 C. Cls. R., 687), as follows:
“When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he can not recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a quantum meruit. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, 'the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the .rules of law as to the character of profits which may be thus claimed. It does not; lie, however, in the mouth of the party who has voluntarily and wrongfully put an end to the contract to say that the party injured has not been damaged at least to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services), after making allowance for the value of materials on hand; at least it does not lie in the mouth of the party in fault to say this, unless he can show that the expenses of the party injured have been extravagant and unnecessary for the purpose of carrying out the contract.”
The claimants, however, do not seek to recover profits, as defined in the Speed Case (supra), as they were permitted, at the expiration of the delay in procuring the site, to proceed and execute their contract.
Their claim is (1) for gains prevented, i. e., for loss due to the enhanced cost of marble during the period of delay so caused by the defendants; (2) for money necessarily expended on the faith of the contract, and (3) for the loss of the claimants’ time and services.
*376 These, we think, come within the rale above stated.
Little else need be said, for if that case is applicable here, as we hold, then it sustains the claimants’ right to recover not only for the amount they were induced to expend on the faith of the contract during the period of delay so caused by the defendants, but for the additional amount paid for the marble necessitated thereby, and as well for their time and services, all of which are set forth in the findings.
The increased cost of labor, amounting to $1,307.06, as set forth in finding Vi, which occurred after the work on the building was about one-half done, grew out of a compromise on the part of the claimants with the stonecutters who had struck for higher wages, but it does not appear that such increase in wages was due to the defendants’ delay in procuring the site, and hence no allowance is made therefor.
From what we have said it follows that judgments must be entered for the items of claim set forth in findings iv and y, amounting in the aggregate to $11,857, which is accordingly ordered.