510     APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

## Sanitary District of Chicago v. McMahon & Montgomery Company et al.

1. CONTRACTS—*When Courts May Receive Evidence Aliunde the Instrument.*—It is only when there is some doubtful, ambiguous or equivocal phrase or expression in the contract that a court may receive evidence *aliunde* the instrument, explaining the subject-matter, the relations of the parties and the inducing causes which led to the making of the agreement, so that the court may be placed in the situation of the parties as nearly as possible, and be the better enabled to interpret their language as they then understood it.

2. SAME—*Due Weight Should be Given to All Provisions.*—Wherever it can be done, due weight and effect should be given to all the provisions of a contract and none disregarded.

3. SAME—*Not Unlawful to Let a Contract to a Bidder at a Price Less Than its Bid.*—It is not unlawful, where the lowest bidder has not conformed to the advertised requirements, to let the contract to the next lowest bidder at a price less than its bid, without any re-advertising.

4. SAME—*When Municipal Board Can Not Let a Contract Without Preliminary Advertising and Bidding.*—When the incorporating act of a municipal corporation requires it to award contracts to the lowest bidder, a contract entered into without the preliminary advertising and bidding prescribed by the statute is void, and affords no basis for a recovery.

5. SAME—*Whether Entire or Severable Depends upon the Intention of the Parties.*—Whether a contract is entire or severable, can not be determined by any precise rule, but must depend upon the intention of the parties, to be ascertained in each case from the language employed and the subject-matter of the contract.

6. SAME—*Facts Under Which it Will Generally be Held Severable.*—If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable.

7. SAME—*Owner Must Furnish Work to be Done so that Contractor May Do Work Within Time Fixed by Contract.*—Under a contract to do work the owner must furnish the work to be done so as to allow the contractor to begin and finish the work within the time fixed by the contract.

8. SAME—*Clause Giving Third Person Power to Decide Questions Arising Between the Parties.*—A clause in a contract that a third person shall decide every question which may arise between the parties relative to the execution thereof, and that his decision shall be final and binding upon both parties, is not a condition precedent to the maintenance of an action upon the contract.

9. SAME—*To Submit Question of Law to Private Party for Settlement, When Invalid.*—An agreement made in advance of the arising of a controversy to submit a question of law to a private party for his decision is invalid, as an attempt to renounce one's right of appeal to the courts for the redress of wrongs.

10. SAME—*Extent of Power of Engineer Under a Provision Giving Him Power to Direct and Supervise the Execution of a Contract.*—A provision in a contract giving an engineer power to direct and superintend the execution of the contract does not give him a general power to change its terms, or extend the time beyond that fixed by the contract for completing the work.

11. EVIDENCE—*As to Age of Plaintiff's Plant upon the Question of its Rental Value.*—When plaintiff's witnesses have testified to the rental value of their plant, defendant should, on cross-examination, be permitted the widest latitude in examining as to anything that has any bearing upon such value, or is at all calculated to assist the jury in determining the same.

12. SAME—*Evidence Offered for One Purpose and Rejected—When Not to be Assigned as Error.*—If evidence be offered for a purpose for which it is incompetent, its rejection can not be assigned as error on the ground that it was incompetent for another purpose not stated or or disclosed.

13. INSTRUCTIONS—*As to Assessing Damages in Suit for Non-Performance of Implied Covenant.*—In a suit brought to recover unliquidated damages for the non-performance of an implied covenant, it is proper to instruct the jury that if they find issues for the plaintiff and that he has sustained damage as charged in the declaration, then to enable the jury to estimate the amount of such damage, it is not necessary that any witness should have expressed an opinion as to the amount thereof, but the jury may themselves make such estimate, from the facts and circumstances in proof, and by considering them in connection with their own knowledge, observation and experience in the business affairs of life.

14. SAME—*As to Consideration of Offer of Settlement in Assessing Damages.*—Where an offer of settlement has been made by the plaintiff, it is not proper to instruct the jury that such offer should not be regarded by them as an admission that no more than that sum is due him.

15. SAME—*Not Based upon Proof in Case, Erroneous.*—Instructions not based upon proof in the case are erroneous.

16. PLEADING—*When Common Counts Are Sufficient.*—The common counts are sufficient when nothing remains to be done under a contract, *i. e.*, when it is completely executed. But damages resulting from the non-performance of an implied covenant can not be recovered under the common counts; they must be sued for specially.

17. DAMAGES—*Measure of, for Breach of Contract.*—A party, for the breach of a contract, is entitled to such damage as may be fairly and reasonably considered to arise naturally, that is, in the usual course of

**512** **Appellate Courts of Illinois.**

Vol. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

things, from such breach itself, or as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

18. Same—*Measure Of, for Delay in Obtaining Right of Way upon Which Plaintiff Was to Construct a Canal.*—The measure of the plaintiffs' damages for delay in obtaining the right of way upon which they were employed to construct a canal is the market rental value of dredges, tugs and scows during the time they were deprived of them.

19. Same—*Plaintiff Only Required to Exercise Reasonable Diligence to Reduce its Loss.*—Plaintiffs in an action for breach of contract are only required to show that they have exercised reasonable diligence to reduce their loss.

**Assumpsit**, on a contract for excavating a canal. Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed October 9, 1903. Rehearing denied December 22, 1903.

This is a suit by appellees against appellant for damages claimed by reason of appellant's delay in furnishing the right of way which it is alleged appellant was under an implied obligation to furnish appellees under a contract between the parties whereby appellees undertook to excavate and build Section O of the drainage canal. In all other respects the contract has been fully executed and performed by both of the parties to it. There was a trial before a jury who rendered a verdict for $179,595, upon which judgment was rendered.

Section O of the canal begins at the south branch of the Chicago river at Robey street and extends in a southwesterly direction 7,096.7 feet, crossing Western avenue Boulevard, Western avenue proper, and further west a group of railways, all running north and south. Before the making of the contract it had become evident (and so appellant's committee reported to its board of trustees) "that the question of obtaining a crossing through and under the railroad tracks of the joint right of way of the railroads near Western avenue was a very serious one, and that it would perhaps be impossible to settle this question for months to come. * * * The chief engineer has proposed a plan which greatly facilitates the solution of the problem. He

proposes to build a subsidiary channel between the main channel and the west fork of the river at some convenient point west of said railroads, thus giving to all the property owners along the Ogden ditch a direct navigable opening into the Chicago river through the main channel."

Accordingly the contract was so drawn as to provide for the building both of Section O of the main channel and of the subsidiary one (called in the contract the collateral channel). It bears date May 2, 1894, was entered into between appellant as party of the first part and appellees as party of the second part, and in part reads as follows :

"A. Witnesseth : That the said party of the second part has covenanted, contracted and agreed, and by these presents does covenant, contract and agree with said party of the first part for the consideration of the payments to be made as provided for herein, to the said party of the second part by the said party of the first part, and under a penalty expressed in a bond bearing even date herewith, at his own proper cost and expense to do all the work, and to furnish all materials, tools, explosives, labor and all appliances and appurtenances called for by this agreement, in the manner and under the conditions hereinafter stipulated, that are necessary to the complete excavation and entire removal of earth, rock, glacial drift and other material, from that portion of the said main drainage channel, known and distinguished by the specifications herein contained and the plans accompanying them, as Section ' O,' together with the building of all collateral works, which, by the terms of this contract, are included in the same. Said section to be entirely completed and prepared ready for inspection as provided for in section 27 of an act of the legislature of the State of Illinois, entitled 'An act to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers,' approved May 29, 1889, in force July 1, 1889.

" B. The work shall be executed under the direction and supervision of the chief engineer of the Sanitary District of Chicago, and such assistants, superintendents and inspectors as the chief engineer may appoint, and by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and on whose inspection all work shall be

514    Appellate Courts of Illinois.

Vol. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

accepted or condemned. The said chief engineer and his assistants and inspectors shall have full power to reject or condemn all materials furnished or work performed under this contract which do not fully conform to its spirit, and to the terms and conditions herein expressed; and the chief engineer shall decide every question which may arise between the parties hereto relative to the execution thereof, and his decision shall be final and binding upon both parties."   *   *   *

" D. 1. Location.—The work covered by and included in these specifications is the excavation of that part of the main drainage channel and the building of certain collateral works for the Sanitary District of Chicago lying between the north and south center line of section 35, township 39 north, range 13, east of the third principal meridian, in Cook county, Illinois, and the center of Robey street in the city of Chicago. Beginning near the center line of said section 35, the said part of the said main drainage channel is located approximately 663 feet northwesterly of and parallel to the north reserve line of the Illinois and Michigan Canal, as shown on accompanying plan marked No. 1, and as located by the chief engineer. The total approximate length of the excavation is 11,540 feet, or about two and two-tenths miles."   *   *   *

" 7. Collateral Channel.—The contractor shall excavate a channel from the west fork of the south branch of the Chicago river to connect the same with the main channel of the Sanitary District, upon such route as shall be hereafter determined and located by the chief engineer. The said channel to be excavated to a depth of twelve (12) feet below Chicago datum, to be sixty (60) feet wide on the bottom and to have side slopes of one (1) foot vertical to one foot and one-half (1½) horizontal. This channel is a collateral work of Section ' O,' and is subject to all the terms and conditions of the specifications for that section, except as herein modified. For the excavation and removal of the material from this collateral channel, the party of the first part is to pay, and the party of the second part is to receive the sum of nineteen and nine-tenths (19.9) cents for each and every cubic yard removed. The work on said collateral channel shall be begun as soon as said Sanitary District shall have secured the necessary right of way therefor, and shall have so notified the contractor, and shall be prosecuted diligently under the direction of the chief engineer until same is completed."   *   *   *

" 7c.  No work shall be done upon any portion of the line covered by this contract which, in the judgment of the chief engineer should be kept free and unincumbered pending the adjustment of any question or questions affecting the relations of this district with the municipality of Chicago, the Board of Park Commissioners, or any railway or corporation, growing out of the re-adjustment of streets, highways, boulevards, or railway tracks, until such time as the said chief engineer shall in writing order the contractor to proceed upon the portions exempted as above." * * *

" 11.  Highways.—All the public roads or streets now open and in actual use by the public, crossing or lying adjacent to the main channel, shall be kept open and unobstructed during the progress of the work.  No interference with any such public road or street will be allowed until a temporary or permanent road or street has been provided, under the direction of the chief engineer, which will permit safe and free travel.  No interference will be allowed with any railway until such time as other and proper provision for the operation of such railway has been made under the direction of the chief engineer." * * *

" G.  Time.—The contractor agrees to begin work within fifteen days after the execution of this contract.  He agrees to carry it on at such points and in such order of procedure as the chief engineer may direct.

All the main channel work provided to be done under this contract shall be completed and ready for inspection on or before the 31st of May, of the year 1896.  All levee work to be completed on or before October 1, 1894.

The work done each month shall not be less than such proportion of the whole work as one month bears to the total number of months agreed upon for the completion of said work, provided that the time from the date of this contract to June 1, 1894, shall be considered as one month, and the last two months before date of completion, as one month; and, provided further, that this rate shall not be required if, at any time, the aggregate work done exceeds the total proportion due to the time that has passed since May 1, 1894; and also provided that the Sanitary District shall not be obligated to make payment in excess of the above monthly proportion; and said April, 1894, is hereby fixed as the date from which all progress estimates shall be made."

" H.  Price.—In consideration of the said work being carried on and completed in time and manner as specified,

516     APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

the said party of the first part agrees to pay to the said party of the second part, and the said party of the second part agrees to receive and accept as full compensation therefor, including the furnishing by him of all necessary materials, tools, labor, machinery and appliances :

For each cubic yard of excavation, disposed of as provided in paragraph 7a, twenty-one one-hundredths ($0.21) dollars. For each cubic yard excavated from the collateral channel, nineteen and nine-tenths (19.9) cents."

" J. Time and Manner of Payment.—It is agreed by the party of the first part, that on or before the 10th and the 25th days of each month, during the progress of the work, and subject to the provisions hereinbefore specified under the head of ' time,' payment will be made to the said party of the second part to the amount of 87½ per cent of the contract price of the approximate amount of work done during the previous half month, upon written certificates from the chief engineer that such approximate amount of work has been done during that period, 12½ per cent being reserved until the completion and acceptance of the whole work, provided the work has been done in all particulars in conformity with this contract, and to the satisfaction of the chief engineer."

" K. Certificate.—On all the work provided for in this contract being completed, in accordance with the contract, and to the full satisfaction of the chief engineer, and on its being inspected by him and a certificate made by him setting forth the amount of said work, and that the said work has been completed, the said party of the first part agrees to pay to the said party of the second part the amount shown to be due to the said second party by the said certificate of the said chief engineer, including the 12½ per cent reserve." * * *

Section 11 of the Drainage Act (2 S. & C. 1494) provides as follows :

" All contracts for work to be done by such municipality, the expense of which will exceed $500, shall be let to the lowest responsible bidder therefor, upon not less than sixty days public notice of the terms and conditions upon which the contract is to be let having been given by publication in a newspaper, etc. The said board shall have power and authority to reject any and all bids and re-advertise."

Advertisement was made in due form for Section O of the

main channel. At that time the collateral channel was not contemplated and the advertisement was confined to the main channel. Bids were invited in the alternative, reserving to the district the right to have the spoil (excavated material) left on the bank of the canal or removed from the right of way.

Bids were opened April 18, 1894, and are in part tabulated below. Ten were for spoiling on the right of way; four only for removal from the right of way. The four were :

Green's Dredging Company, 19.9c per cubic yard, amounting upon the then estimated quantity to .......................................$288,462.02

Hayes Brothers, 23c. per cubic yard.......... 333,356.71

McMahon & Montgomery Company, 23c...... 333,356.71

Broadhead & Hickey, 35c................... 507,281.95

The district decided to require the spoil to be removed from the right of way. It rejected the bid of Green's Dredging Company as not being in accordance with the advertised proposals and awarded the contract to the McMahon & Montgomery Company at twenty-one cents per cubic yard of the main channel (being two cents less than the amount bid), and at 19.9 cents per cubic yard of the collateral channel. In respect of the latter there had been no advertising or bids, although the cost of the work was much in excess of $500. The district, at the request of the firm to whom the contract was awarded, permitted the four other appellees to become parties thereto and sign the same as a part of the party of the second part.

Appellant encountered great difficulty in making arrangements with the city of Chicago, the park commissioners and the railway companies for obtaining the right of way to cross Western avenue, the boulevard and the railway tracks, and thus it happened that appellees were subjected to such serious delays that instead of finishing the work " on or before the 31st of May, 1896 " (as called for by the contract) they could not and did not finish it until March, 1899. At various times while the contract was being per-

518      Appellate Courts of Illinois.

Vol. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

formed, appellees protested against this delay and notified appellant that they would hold it liable for all damages resulting therefrom. In the receipt given by appellees for the final payment, their claim for such damage was expressly excepted.

In doing the work appellees used a dredging plant consisting of four dredges, four tugs and ten scows, and the judgment appealed from rests upon what the jury found to be the rental value of the plant during the period of the delay.

The declaration consists of the common counts and a special count. The latter omits and in no way refers to section 7 (relating to the collateral channel) of article D of the contract. No damages were claimed for delays in connection with the building of the collateral channel.

For the plaintiffs the following instructions (among others) were given:

(9) "If you believe from the evidence that the chief engineer refused to consider or pass on any claim for damages for delay caused by the defendant, and that the plaintiffs, acting in good faith, on such refusal presented their claims for such damages to the defendant, and that the defendant, being informed of such refusal by the engineer, assumed jurisdiction to pass on such claims of the plaintiffs, and did pass on them, then the defendant waived all right, if it ever had any, to insist that the engineer must first pass on such claims. (Given.)

(10) If, under the evidence and the instructions of the court, the jury find the issues for the plaintiffs, and that the plaintiffs have been by the defendant wrongfully deprived of the use of dredges, tugs and scows, and have thereby sustained damages as charged in the declaration, then the measure of the plaintiffs' said damages will be the market rental value (if from the evidence you believe there is such a rental value) of the dredges, tugs and scows of which they were so deprived, during the time they were so deprived. (Given.)

(11) If, under the evidence and the instructions of the court, you find the issues for the plaintiffs, and that the plaintiffs have sustained damages as charged in the declaration, then to enable the jury to estimate the amount of such damages, it is not necessary that any witness should

have expressed an opinion as to the amount of such damage, but the jury may themselves make such estimate from the facts and circumstances in proof, and by considering them in connection with their own knowledge, observation and experience in the business affairs of life.   (Given.)

(12) The jury are instructed that the plaintiffs are not bound by any offer they may have made to accept $225,000 in settlement, if the jury believe from the evidence that such offer was made for the purpose of bringing about an amicable settlement or by way of compromise, nor in such case should such offer be regarded as an admission that no more than that sum was due.   (Given.)"

JAMES TODD and JOHN S. COOPER, attorneys for appellant; WALKER & PAYNE, of counsel.

GEORGE BURRY and HARRIS S. KEELER, attorneys for appellees.

MR. JUSTICE STEIN delivered the opinion of the court.

First.   In contemplation of law Green's Dredging Company was not a bidder, because its bid did not conform to the advertised requirements.   The contract was let to the next lowest bidder, McMahon & Montgomery Company, at a price less than its bid, without any re-advertising, and it is now claimed that this avoided the contract.   No authorities are cited to sustain the contention.   If (so far as this point is concerned) it was lawful to let the company have the contract at the price (twenty-three cents) bid by it—and this is not denied—then it was not contrary to the statute, or to public policy, or to the duty appellant owed to the public, for its trustees, by persuasion, to induce that company to consent to a reduction of the price from twenty-three to twenty-one cents.   Nor was there anything unlawful in the permission given by the trustees to the successful bidder to associate with itself in the work other contractors and to let them sign the contract.   In this way appellant only obtained additional security for its due execution, and for that purpose no further advertising or bidding was required.

Second.   As appears from the foregoing statement,

520	APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

there was no advertising or bidding in respect of the work involved in the building of the collateral channel and the paragraph in the contract relating to it was omitted from the special count. It is therefore insisted that a fatal variance exists between the proof and the declaration, and that the instrument sued on is void as an entirety. As both these objections rest upon the same foundation, they will be considered together. Before doing so, it is proper to state that if the contract was not admissible under the special count, it was not admissible at all. It could not be received under the common counts. It does not in express terms obligate appellant to furnish the right of way. If such obligation exists it arises by implication of law from the expressed terms. Hence it was for the pleader either to declare upon the instrument, according to its alleged legal effect, or to set it forth *in haec verba* to enable the court to determine whether the obligation existed. The rule is that the common counts are sufficient when nothing remains to be done under the contract, *i. e.*, when it is completely executed. Here, so far as the cause of action upon which a recovery was sought is concerned, the contract was and is wholly unexecuted. Appellees do not sue for the price of work done and materials furnished; that has all been paid. They sue for damages resulting from the non-performance of an implied covenant.

That an agreement, such as the one at bar, if entered into without the preliminary advertising and bidding prescribed by the statute, is void and affords no basis for a recovery, is the settled law of the state. (Dement v. Rokker, 126 Ill. 194; Littler v. Jayne, 124 Ill. 123; Sanitary District v. Lee, 79 Ill. App. 159.) The case of Johnson v. Sanitary District, 163 Ill. 285, cited by appellees, is not in conflict with these decisions, and lays down no contrary rule. There it was sought by a mandatory injunction to compel the awarding of a contract to one of several bidders. The application was denied on the ground that " the discretion vested by the statute in a municipal board to let a contract for public work to the lowest responsible bidder, and to

reject any and all bids, is judicial in its nature, and will not be controlled by the courts." The case does not hold and can not be construed as holding that if such a contract were sued on and it appeared that it had been made without advertising for bids, it would not be declared void.

It is urged, however, that the provisions relating to the collateral channel are severable from the rest of the instrument, and that in substance and effect it embodies two separate and independent contracts. By clause 7 of section D the price for excavating the collateral channel was fixed at 19.9 cents per cubic yard, whereas for doing the same work on the main channel appellees were to be paid twenty one cents for each cubic yard. As required by the contract, the engineer in preparing his progress certificates and final certificate, kept the number of yards excavated in the one channel separate and apart from the number of yards excavated in the other, and separate vouchers were issued. All the provisions relating to either are easily separable from those relating to the other. Indeed, one would expect this to be the case when it is remembered that the building of the collateral channel was an afterthought, and not contemplated or referred to in the original advertisement and bids. The first mention of this channel appears in the proceedings of appellant's board of trustees had on May 2, 1894, the very day of the date of the instrument in suit. In Keeler v. Clifford, 165 Ill. 544, the court say:

" Whether a contract is entire or severable, can not be determined by any precise rule, but must depend upon the intention of the parties, to be ascertained in each case from the language employed and the subject-matter of the contract."

They then cite with approval from 2 Parsons on Contracts, marg. p. 517:

" If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds where the price to be paid is clearly and distinctly apportioned to

522 APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

different parts of what is to be performed, although the latter is in its nature single and entire." .

Applying these rules, we have here two distinct contracts, as to one of which the requirements of the statute in the matter of advertising and receiving bids were complied with, and as to the other they were not. No recovery is sought in respect of the latter. If the parties, instead of putting both in the same paper, had executed and signed two, one relating to the main channel and the other to the collateral, and had complied with the statute as to the main channel and not as to the collateral, no one would contend that the failure in respect of the latter would taint or in anywise affect the validity of the former. In legal effect the situation is the same.

Third. The work contemplated by the contract could not be done without the right of way being procured by somebody. From the very first the attitude of appellant was that this duty rested upon it, and such seems to be the opinion of its counsel; for they argued with much force that paragraph 7c and the last sentence of paragraph 7 in section D of the contract were put into it for the express purpose of allowing appellant the necessary time for procuring the right of way. In its instructions tendered to but refused by the court, notably numbers 19 and 20, appellant conceded its obligation to procure the right of way. That this construction of the contract by appellant, whose interest lay in precisely the other direction, is correct, admits of no doubt. The contract (section F) provides that appellees shall do the work in strict conformity to the requirements of the law under which the Sanitary District of Chicago is organized, entitled " An act to create Sanitary Districts, etc., approved May 29, 1899, in force July 1, 1899." Paragraph 8 of this public law, thus specifically—although unnecessarily—made a part of the contract, empowers appellant to "acquire by purchase, condemnation or otherwise, any and all real and personal property, right of way and privilege that may be required for its corporate purposes." What was in the minds of the

parties and what their intentions were in this regard appears further from paragraph 7 of section D, where it is stipulated that " the work on said collateral channel shall be begun as soon as said Sanitary District shall have secured the necessary right of way therefor and shall have so notified" appellees.   It will be noticed that the parties here assume and regard it as a matter of course that appellant shall secure the right of way; they do not think it necessary so to stipulate.   Appellees could not excavate the canal without a right of way.   They did not possess the power to condemn, but appellant did.   They were to be paid and compensated, not for purchasing the right of way, but at the rate of twenty-one cents for each cubic yard of excavation; and this was to be " full compensation for said work, including the furnishing of all necessary materials, tools, labor, machinery and appliances " (section H of contract).   Bangor Furnace Co. v. Magill, 108 Ill. 656; Minneapolis Mill Co. v. Goodnow, 40 Minn. 497; Genovese v. Third Ave. R. R. Co., 43 N. Y. Supp. (App. Div.) 8; King, etc., Co. v. St. Louis, 43 Fed. Rep. 768; Kelly v. U. S., 31 Ct. Cl. 361; Weeks v. Rector, 67 N. Y. Supp. 671 (Supr. Ct. App. Div.); Chicago, etc., Co. v. Yawger, 56 N. E. Rep. 50; Allamon v. Mayor, etc., 43 Barb. 33.

If appellees were unjustifiably delayed by appellant in the performance of the work and suffered damages thereby, they would be entitled to compensation for the damage unless there be something in the contract which deprives them of the right.   Appellant contends that paragraph 7c of section D was intended by the parties so to operate. Unquestionably, the paragraph was inserted with a view to the contemplated difficulties in obtaining the right of way; but it relates to only a very small portion of the entire route, and simply provides that "no work shall be done   *   *   *   until such time as the said chief engineer shall, in writing, order the contractor to proceed upon the portions exempted as above."   The contract not only fixed the time within which the work was to be completed, but fixed also the minimum rate of progress.   The work was to

524    Appellate. Courts of Illinois.

Vol. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

be commenced within fifteen days from the date of the contract and to be completed on or before May 31, 1896. There was to be done each month not less than such proportion of the whole work as one month bears to the whole number of months agreed upon for the completion of the work. The numerous provisions giving appellant's chief engineer power to direct and superintend the execution of the contract did not give him a general power to change its terms, or extend the time beyond that fixed by the contract for completing the work. He might give directions within the limits of the contract, but no further. If he could change its terms in one particular, he could do so in all. (Adlard v. Muldoon, 45 Ill. 193; McVerry v. Kidwell, 63 Cal. 246; Bond v. Mayor, 19 N. J. Eq. 376.) Moreover, the contract fairly bristles with provisions intended for the benefit of appellant and to safeguard its rights. The engineer " shall have full power to reject or condemn;" he " shall decide every question relative to the execution hereof, and his decision shall be final and binding;" appellant " reserves the right to change said grade (of the channel) by raising or lowering it, or by increasing or decreasing the slope, but such change shall in no wise affect the terms of this contract as to price, or entitle the contractor to any compensation additional to the rate hereby fixed, or render the Sanitary District liable for any damages whatsoever, direct or indirect;" " if it should prove necessary or desirable to unwater the channel for purposes of inspection " appellees " shall do the same without additional cost;" appellant " reserves the right to permit one contractor to pass over or across the contract section of another for the purpose of transporting material or machinery to his own section;" it " reserves the right to enter upon the main channel and right of way, at any time or place for the purpose of erecting or preparing," etc.; " all claims for extra labor or material furnished by the contractors, or for damages from any cause whatever, must be reported to the chief engineer at the time such labor or material are furnished or such damages occur, and

they must also be presented to him in writing at the end of the month;" nothing shall be paid for as extra work that can be classified under any of the heads upon which the price is fixed by this contract;" "whenever work is to be done not contemplated or covered by the prices herein given, the chief engineer shall fix such prices therefor as he shall consider just and equitable, and the contractors shall abide by such prices," etc.; and finally there is an entire section (E) devoted exclusively to the subject of "damages" for which appellees shall be liable, and appellant not.

In view of these provisions, and many others similar in object but not here quoted, the conclusion is irresistible that if the parties had intended to release appellant from damages for failing to furnish the right of way they would have said so.

Fourth.    The court excluded all proof tending to show knowledge by appellees before and at the time of the making of the contract of the existence of obstacles to the obtaining of the right of way by appellant, and of the likelihood of delays in that regard.    At the trial the offer was made "for the purpose of showing that the plaintiffs, when they entered into the contract, had full knowledge of the situation, knew that the right to cross these streets and railroads had not been secured, and that they discussed and considered that fact and contemplated these very delays."

It was not then nor is it now claimed that there is any doubtful, ambiguous or equivocal phrase or expression in the contract; and it is only under such circumstances that a court may receive evidence *aliunde* the instrument, explaining the subject-matter, the relations of the parties and the inducing causes which led to the making of the agreement, so that the court may be placed in the situation of the parties as nearly as possible, and be the better enabled to interpret their language as they then understood it. (21 A. & E. Enc. of Law, 2d Ed., 1108; Rector v. Deposit Co., 190 Ill. 380, 384; Lumber Co. v. Coal Co., 160 Ill. 85, 92; Barrett v. Stow, 15 Ill. 423; Wood v. Clark, 121 Ill. 362; Irwin v. Powell, 188 Ill. 107.)

526     APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

Counsel now claim that the evidence was offered "to rebut the implication of law" by which, as the trial court held, appellant was liable for "damages resulting from a suspension of the work." Assuming (what we do. not decide but are strongly inclined to doubt) that the evidence was competent for this purpose, it is sufficient to say that at the trial no such purpose was announced. It was limited to the one above stated.

Fifth. The jury were instructed that the measure of the plaintiffs' damages is the market rental value of dredges, tugs, and scows during the time that they were deprived of them. The evidence tended to show that by reason of the delays in the furnishing of the right of way, appellees had for months been unable to make any use of their dredging plant. It is urged that the instruction was wrong, and that the true measure of damage was the interest on the capital invested by appellees in their plant and the amount expended by them in taking care of it. We think the court adopted the correct rule. (Green v. Mann, 11 Ill. 613; Consumers Ice Co. v. Jenkins, 58 Ill. App. 519; Galbraith v. Iron Works, 50 Ill. App. 247, 253; Wood v. State, 66 Md. 61; Western Co. v. Cox, 39 Ind. 260; Griffin v. Colver, 16 N. Y. 489.) Sedgwick in his "Measure of Damages" (6th Ed. 81, marg. p. 76, note 1,) calls the last case "the leading American case" on the subject.

Ever since the decision in Hadley v. Baxendale, 26 Eng. L. & Eq., 398, the rule has been that a party, for a breach of contract, is entitled to such damage as may be fairly and reasonably considered to arise naturally, that is, in the usual course of things, from such breach itself, or as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Appellant knew that appellees possessed and used their plant for certain purposes and knew or should have known that it had a certain rental value. The rule contended for by appellant is a hard and fast one, which may be proper enough in some cases, as, e. g., in Green v. Williams, 45 Ill. 206, where the plaintiff

through the fault of the defendant was prevented from carrying on her business on certain premises, and she was held entitled to "interest during such suspension on the amount of capital invested in her business." The business, consisting of a stock of goods, had no rental value. The only use the plaintiff had for her goods in the usual course of things, her only object in having them, was to sell them. Both branches of the rule in Hadley v. Baxendale are, we think, applicable to the case at bar.

Sixth. The court refused to let appellant show fully how old appellees' plant was, and how long it had been in use. Appellees' witnesses had testified that the value and cost of the plant entered into the question of its rental value. But the court excluded an offer to show such cost and value. In these rulings there was error. Manifestly, when appellees' witnesses had testified to the rental value of the dredges, tugs and scows, appellant should, on cross-examination, have been permitted the widest latitude in examining as to anything that had any hearing upon such value, or was at all calculated to assist the jury in determining the same.

Seventh. By plaintiffs' instructions 6 and 7 the jury were, in substance, informed that notwithstanding paragraphs D 7c and D 11 of the contract (reciting them) the defendant was liable for the damages resulting from all delays by which the plaintiffs were prevented from doing the work, or any part of it which, by the contract, they had undertaken to do within the time within which they were to do it. The court refused defendant's instructions 19 and 20, to the effect that if, in the light of said paragraphs (again reciting them), the evidence showed that the defendant endeavored in good faith and with reasonable diligence to secure the right of way across the avenue, the boulevard and the railway tracks, and the other obstacles to plaintiffs' progress, and that delays occurred by reason of time necessarily employed in securing said right of way, then as to delay due solely to the time reasonably occupied in such endeavor, the plaintiffs could not recover. By giving plaintiffs' instructions and refusing defendant's, the court virtu-

528 APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

ally cut out of the contract said paragraphs D 7c and D 11, and treated them as if they did not exist.

No rule pertaining to the construction of a written instrument is better settled or entitled to greater consideration than that wherever it can be done, due weight and effect shall be given to all its provisions, and none disregarded. It is to be presumed that they are all inserted deliberately and for a purpose. The purpose for which the parties inserted the provisions in question is quite plain. The existence of the obstacles to the obtaining of the right of way for Section O of the canal was well known to appellant at least, as appears from the report of its joint committee on engineering and finance, by which its board of trustees was informed of the obstacles before the execution of the contract. While there is no direct proof, it is altogether likely that appellees possessed the same knowledge. But however this may be, the language of paragraphs D 7c and D 11 shows that these apprehended obstacles were in the minds of the parties, and were what they stipulated about:

"No work shall be done upon any portion of the line covered by this contract which, in the judgment of the chief engineer, should be kept free and unincumbered pending the adjustment of any questions affecting the relations of this district with the city of Chicago, the board of park commissioners, or any railway company, or corporation, growing out of the re-adjustment of streets, highways, boulevards or railway tracks, until such time as the chief engineer shall order the contractors to proceed upon the portions exempted as above."

All public roads or streets crossing or lying adjacent to the main channel were to be kept open and unobstructed:

"No interference will be allowed with any railway until such time as other and proper provision for the operation of such railway has been made under the direction of the chief engineer."

This language unmistakably contemplates that delays would occur, and under it appellant can only be held for such delays as it could not, in the exercise of good faith and reasonable diligence, prevent. Appellees themselves

took this view of the matter in their letter of complaint to the board, dated July 20, 1895, in which they say:

"We therefore notify your board that we shall at the proper time present our claim for unnecessary and unreasonable delay."

We do not lose sight of the fact that appellees were obligated by the contract to perform the work by a certain time, and that possibly they might have been prevented from doing so by necessary and reasonable delays. That was a risk they took in signing the contract. They were not obliged to sign it, and no doubt did so in the belief that, notwithstanding any delays that might properly occur, they would be able to finish the job within contract time. This interpretation of the contract gives due effect to all its provisions and carries out the evident intent of the parties. The court erred in giving plaintiffs' instructions 6 and 7, and refusing defendant's instruction 19.

No objection is perceived to instruction 11 given for plaintiffs. It has met with the approval of the Supreme Court in personal injury cases and seems to be applicable and proper in an action of this kind.

To plaintiffs' instruction 12 (for this and No. 11 see statement preceding this opinion) it is objected that there is no proof showing any offer of settlement. If there was no such proof (and none has been pointed out) the instruction should not have been given. Nor should the court have said "in such case such offer (by the plaintiffs) should not be regarded as an admission that no more than that sum was due." This is more in the nature of argument than laying down a rule of law, and may have been taken by the jury as an opinion or intimation by the court that plaintiffs were entitled to a substantial recovery.

Appellant's refused instruction that the jury should not allow damages for delays occurring after May 31, 1896, the time fixed in the contract for the completion of the work, was, if otherwise proper, objectionable as not conditioned on a finding that the delays before that time were reasonable or necessary.

530    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Sanitary Dist. of Chicago v. McMahon & Montgomery Co.

Appellant's refused instructions 2 and 7 sought to announce the rule that it was the duty of appellees by reasonable exertions on their part to reduce their loss as much as possible. While the general principle is correct, yet the court did not err in refusing the instructions. It is not the law, as stated in the first part of No. 2, that " plaintiffs can not recover for any damages which they had it in their power to avoid." This imposed upon them the highest degree of diligence; and that the law does not require. They were bound to exercise reasonable diligence, but no more. The second part of the instruction assumes as a fact that the evidence shows plaintiffs to have failed in the duty of seeking to protect themselves from loss. Instruction No. 7 assumes that plaintiffs employed " an excess of necessary equipment," after leaving it to the jury to find whether the work could not have been done " with two dredges, two tugs and four scows." We have been unable to find such proof, and none has been pointed out. The same is true of appellant's refused instruction No. 8, which submitted the question whether plaintiffs used " an excessive or unnecessary amount of machinery."

Eighth. There are several reasons why the fact that appellees did not obtain from the chief engineer of appellant a decision under the clause that " he shall decide every question which may arise between the parties relative to the execution hereof, and his decision shall be final and binding upon both parties," is not a bar to the present action.

a. The clause is not made a condition precedent to the maintenance of the action. Birmingham Ins. Co. v. Pulver, 126 Ill. 329, 338.

b. Whether appellant was charged with the duty of providing appellees with the right of way is a question of law, and an agreement made in advance of the arising of the controversy to submit such a question to a private party for his decision is invalid as an atttempt to renounce one's right of appeal to the courts for the redress of wrongs. Myers v. Jenkins (Ohio), 57 N. E. 1089, 1093; B. & O. R. R.

Co. v. Stankard, 56 Ohio St. 224; Niagara Ins. Co. v. Bishop, 154 Ill. 9, 16; Frink v. Ryan, 3 Scam. 322, 324; Supreme Council v. Forsinger (Ind.), 25 N. E. Rep. 129; Collins v. U. S., 34 Ct. Cl. 294, 332.

In Harlev v. Sanitary District of Chicago, 107 Ill. App. 546, where, with reference to the present question the form of contract was the same as here, it appeared that the decision of the chief engineer under the above clause in regard to the rate of progress of the work had been adverse to the contractor, and appellant (appellee in that case) claimed the decision to be final and conclusive. The court held (pp. 564, 565) that on account of other conflicting and contradictory provisions of the contract " no decision as to rate of progress or of any other matter relating to the contract which the chief engineer might make, would have been binding upon appellee, and consequently would not have been binding upon appellant. It is fundamental that a contract of this kind, to be valid, must be binding upon both parties."

d. Even if the clause requiring the submission were valid, its wording would not include the present cause of action, which involves a question not " relative to the execution " of the contract. Whether appellant is liable for the delays sued for, has nothing to do with the execution of the contract. Such " execution " relates " only to the character and amount of work and materials with reference to whether the same were done and furnished in accordance with the contract, looking to its final completion and to payment therefor." Harlev v. Sanitary District, *supra*, p. 564.

The views above expressed render it unnecessary to pass explicitly upon instructions 8 and 9 given for appellees.

For the errors pointed out the judgment of the Circuit Court is reversed and the cause remanded.