Howiiy, J.,
dissenting:
If the quartermaster was clothed with authority to contract on behalf of the Government for the lighterage (and as to this there is no dispute), then the correspondence between the quartermaster and plaintiff was a substantial compliance, so far as the latter was concerned, with the requirements of section 3744 of the Revised Statutes for everything contemplated to be done by the plaintiff. The rule which calls for a copy of all correspondence is not doubted where necessary to show what the contract is. But where the contract is complete an unnecessary and an immaterial letter need not be introduced. The contract consists of one paper writing, being the letter of the quartermaster to plaintiff and plaintiff’s acceptance of the terms and conditions in writing at the foot thereof. This made the contract complete in itself, and the matter must be determined by the obligations arising from the proposal of the quartermaster and its acceptance by plaintiff.
The written proposal to do the lightering set forth in the petition and which plaintiff undertook likewise in -writing to perform bound the latter to furnish lighterage and steve-doring for Government stores at Cape Nome in the specific *83 quantities and at the prices first set forth in the petition. Whether plaintiff ivas paid for lightering the specific articles in the amounts and quantities set forth is not clear, and for anything not paid for and provided under that part of the Avritten agreement the Government is bound.
t>ut there is something -more in the further clause of the accepted proposal. Plaintiff ivas required “ to furnish sufficient lighterage and tugs on twenty-four hours’ notice by the local or ship’s quartermaster to expeditiously' and continuously discharge any given.cargo or part thereof designated by the local or ship’s quartermaster.”
The allegation that during the months of September and October, 1900, supplies arriving on the steamers named were to be unloaded and that plaintiff ivas ready and fully prepared to carry out the contract, but was not permitted to handle the freight, brings this further lightering within the agreement, because it is alleged that the quartermaster notified plaintiff to hold himself in readiness to discharge the further supplies on the steamers named which had stores aboard for the department and because the general commanding at Nome declined to cancel the contract for further lightering vessels as they came in, but directed plaintiff to get together all the tugs and lighters that he could, so as to be ready to handle the ships as fast as possible. The contract, therefore, ivas not an agreement to merely lighter the specific articles described in the petition, but was an agreement also to discharge any given cargo or part thereof designated by the proper officer. This necessarily meant the inclusion of all lightering to be done there as the ships came in.
It appears that plaintiff kept his outfit in readiness, and with no other work to do except for Government he maintained his men and outfit ready to proceed under that part of the contract. But when the ships arrived it ivas found that the stores on board had been shipped on bills of lading-calling for delivery of the stores and coal on the beach, and plaintiff was not permitted, over his protest, to discharge the ships, although he boarded each one as it came in for that purpose. During this time plaintiff paid wages, board bills, and fuel, and in consequence of a storm lost one of his scows *84 and had two others crushed in the ice. On the face of the petition it is shown that plaintiff would have discharged his men and laid up his outfit- for the winter, thereby saving these expenses and losses, had he not been notified to hold himself in readiness to continue the lightering under the written agreement with the quartermaster.
For the continued lightering stipulated by the contract, but not performed without fault of the contractor, the latter ought to be indemnified at least for his expenses and losses because the contract for more lightering was unrescinded when the expenses were incurred and the losses were sustained. It would be inequitable to refuse payment where it is shown that plaintiff, during the season, was ready to perform and was actually called on to perform presumably under the written agreement, and then denied the right to proceed. He acted in good faith on the agreement to continuously perform under the terms of the contract; he relied upon the agency of the Government officers to direct him when to proceed and incurred expenses and sustained losses set forth in his petition, which seems to me clearly brings him within the terms of the agreement. If plaintiff was misled by the terms of the written agreement, so were the officers of the Government. Both parties interpreted the contract to mean what the petition shows it to have meant. The sole reason that plaintiff was not paid appears in the properly pleaded statement of the quartermaster that plaintiff was entitled to collect the full amount of his bills duly allowed by quartermaster’s vouchers for $4,781.91 not paid because the Auditor of the War Department said he could not settle a claim for unliquidated damages. That departmental rule can not supersede plaintiff’s right in the courts to recover expenditures and losses incurred by him in his endeavor to comply with the written contract.
On the face of the petition it is shown that the' officer at the place of shipment had no means of knowing whether plaintiff was able to carry out his contract, in consequence of which freight was billed for delivery on the beach. Plaintiff had nothing to do with this, but was bound to hold hiln- *85 self in readiness as directed by the officers of the Government at his end of the line to carry out the agreement. The ignorance of the officer at the place of shipment does not excuse the Government for interfering with what plaintiff and all parties to the agreement understood he was to do under the agreement. Everything is shown on the face of the pleadings material to be shown. It might better be stated in different language, but the petition presents a just cause of complaint because in addition to the circumstances shown which operated to prevent plaintiff from performing and caused him loss there is a distinct allegation that none of the freight was handled by appliances of the Government, which left the contract in full force. Upon both authority and principle plaintiff is certainly entitled to recover- something because there was improper interference. (Kelly's case, 31 C. Cls., 361, U. S., 214; Bulkley v. United States, 7 C. Cls. R., 543.)
But if the services rendered were not within the terms of the written contract they nevertheless come within the exceptional clause mentioned by the Supreme Court in the case of Clark v. United States (95 U. S. R., 539). That is the leading case upon this question of written contracts. After laying down as the rule that the statute is a statute of frauds and that the claimant could not recover upon the executory parol contract, the court is careful to add: “ We do not mean to say that, where a parol contract has been wholly or partially executed and performed on one side, the party performing will not be entitled to recover the fair value of his property or service. On the contrary, we think that he will be entitled to recover such value as upon an implied contract for a quantuni meruit.”
It must also be noted that the parol contract, if it be"; deemed such, was made by an army officer to meet what'he deemed a public exigency. Such agreements need not rest upon advertisements nor be in writing, (Speed's case, 8 Wall., 77.) The services rendered by the claimant were part performance, and under either of the cases cited the claimant is entitled to recover to that extent.